**Christopher Jethro EMERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1139–90.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 24, 1993.

Rehearing Denied April 14, 1993.

Catherine Greene Burnett (court appointed on appeal), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Lester Blizzard, Asst. Dist. Atty., Houston,

Robert Huttash, State's Atty., Austin, for the State.

■■■■■■■■■■■■■■■

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant was originally convicted by a jury of aggravated sexual assault. TEX.PENAL CODE ANN. § 22.-021(a)(1)(A)(i) & (a)(2)(A)(iv). It then assessed his punishment at 10 years' confinement in the Texas Department of Corrections (now the Texas Department of Criminal Justice, Institutional Division). On direct appeal, appellant claimed that the trial court erred when it denied his *Batson* [1] challenge to the State's use of its peremptory strikes. In an unpublished opinion, the Court of Appeals found that appellant failed to introduce sufficient proof to raise an inference that "the State used its peremptory challenges to exclude members of appellant's race." *Emerson v. State*, No. A14–88–00778–CR, 1990 WL 144054 (Tex. App.—Houston [14th Dist.] October 4, 1990). The Court of Appeals therefore held that appellant failed to make a prima facie showing of purposeful discrimination. *Id.* Consequently, the Court of Appeals concluded that the burden never shifted to the State to offer race-neutral explanations for the use of its peremptory strikes. *Id.*

Appellant then petitioned this Court for discretionary review. *Emerson v. State*, 820 S.W.2d 802 (Tex.Cr.App.1991). We found that the Court of Appeals erred when it determined that appellant did not make a prima facie case of purposeful discrimination sufficient to justify a *Batson* hearing. *Id.* at 805. In our review of the record, we found that defense counsel employed comparative analysis after twelve jurors were chosen and before the rest of the venire panel was dismissed.[2] We believe this constituted evidence sufficient to establish a prima facie showing of purposeful discrimination. *Id.* at 804–805. The case was therefore remanded to the trial court to convene a *Batson* hearing to allow the State to give race-neutral explanations for its employment of peremptory challenges. *Id.* at 805. Now that the hearing has been conducted, the matter is again before us to determine if the trial court erred when it found that the prosecutor's explanations were race-neutral.

The record reflects that before peremptory challenges were utilized, defense counsel complained about the composition of the relevant panel. He pointed out that while blacks comprised 33% of the Houston population, only six of the 48 venirepersons were black. After the twelve jurors were selected but before the rest of the venire panel was dismissed, defense counsel then objected to the way the State used its peremptory strikes. He noted that the State used four of nine peremptory challenges against black members of the venire. He believed that the manner in which the peremptory strikes were used denied appellant equal protection, denied him a jury of his peers, and deprived appellant of a fair and impartial trial. The prosecutor responded by showing that two black venirepersons were selected for the jury. He then pointed out that the State only used nine of the ten peremptory strikes it was given. He asserted that if his motive was indeed discriminatory, he would have used the remaining peremptory challenge against one of the two black individuals who ultimately sat on the jury. Both appellant and the State stipulated that appellant was black and that the six venirepersons in question were also black. The trial court subsequently found that appellant did not establish a prima facie case of purposeful discrimination and the trial proceeded.

■■ In *Batson*, the United States Supreme Court outlined a method of proving racial discrimination in the jury selection process. A defendant must first make a prima facie showing of the State's discriminatory use of peremptory challenges. The

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. Such analysis was called for by this court and utilized in *Whitsey v. State*, 796 S.W.2d 707, 715 (Tex.Cr.App.1989).

burden then shifts to the State to give a neutral explanation for the peremptory challenges. The explanation must be clear and reasonably specific. Broad assertions that a prosecutor's reasons are not discriminatory or that the challenged venireperson would be biased in favor of the defendant because of their common race are not sufficient to rebut a prima facie case.

After the *Batson* hearing conducted in the instant case, on remand, the trial court entered findings of fact and conclusions of law. The court found that the selection process employed by the State was a "simple strategy of picking the best possible jury without specific intent to discriminate against anyone." The court also determined that strikes used against the black jurors "were exercised for race-neutral reasons and that there was no purposeful or deliberate attempt to strike any person based on race, or on ethnicity." Additionally, the court concluded "that the State did not systematically exclude members of any cognizable group from the jury on the basis of race in the instant case." Finally, the court determined "that the strikes were made on the basis of trial strategy dealing with the anticipated defense at trial and in light of the prosecutor's attitude toward to (sic) certain professions."

The transcript of the *Batson* hearing shows that the prosecutor used four peremptory challenges against prospective black jurors. It also reveals that the prosecutor noted in his voir dire notes which venirepersons were black. He asserted that he anticipated a *Batson* hearing and wanted to be able to identify black jurors and articulate his race-neutral reasons for striking them. However, the voir dire transcript reflects that the identity of the black members of the venire was established by defense counsel when the venire was initially impanelled. We now turn to the explanations given for the strikes utilized on black veniremembers.

■ The State utilized a peremptory strike against venireperson no. 19. The prosecutor stated that this was done for two reasons. First, the prospective juror had two friends who were in the penitentia-

ry. Additionally, this venireperson was a cab driver. The prosecutor believed that someone employed in this profession would not be as shocked as the average person by the events surrounding the instant case. He therefore felt that this person would be less likely to impose the sort of heavy punishment he was seeking in this case. We find these sufficient race-neutral reasons for striking no. 19.

■ A peremptory challenge was also used against venireperson no. 24. The State gave a two-part explanation for doing so. First of all, this prospective juror had a brother in the penitentiary. Also, this person was seen communicating to people associated with the defense team. We believe these are appropriate race-neutral justifications for utilizing a peremptory strike on this individual.

■ Next, a peremptory challenge was used against prospective juror no. 35. The transcript of the *Batson* hearing reflects that this person was a registered nurse (R.N.). The State believed that an R.N. may recommend to other members of a jury that medical testimony should be introduced in a sexual assault trial. Since the prosecutor was not going to introduce any medical testimony, he believed this person may adversely affect his case. We find this a sufficient race-neutral ground for striking venireperson no. 35.

Finally, a peremptory strike was used against venireperson no. 33. During the *Batson* hearing, the prosecutor stated that this was done because of this person's occupation; however, from the transcript, it is questionable whether this person's profession was actually established. Initially, the prosecutor believed that the venireperson was an unemployed college student or professor. The prosecutor testified that he believed that both the characteristics of being unemployed and a college student and/or professor suggested a very liberal attitude. He further stated that he believed that a conservative person, instead of being unemployed and pursuing higher education, would have been working in a career. Upon further examination, the prosecutor recalled that the veniremember

was a college teaching assistant. He again reiterated his belief that the college environment suggested severe liberalism, a characteristic which he did not want a member of the petit jury to have. The record reflects that no individual questions were directed at this person.

■ After a prosecutor gives nondiscriminatory reasons for striking prospective minority jurors from the venire, the trial judge must determine whether these facially neutral explanations are contrived to avoid admitting acts of discrimination. *Keeton v. State,* 749 S.W.2d 861, 868 (Tex. Cr.App.1988), citing *Ex Parte Branch,* 526 So.2d 609 (Ala.1987); *Whitsey v. State,* 796 S.W.2d 707, at 716. This must be done because a prosecutor, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror. *Keeton v. State,* 749 S.W.2d, at 868. The trial judge as supervisor of the voir dire is in a position to readily perceive discrepancies during the jury selection process. *Vargas v. State,* 838 S.W.2d 552, 557 (Tex.Crim.App. September 16, 1992); *Young v. State* 826 S.W.2d 141, 145 (Tex.Cr.App.1991). Evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within the province of the trial court. *Vargas v. State,* 838 S.W.2d at 554, citing *Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The trial judge may not, however, merely accept the specific reasons given by the prosecutor at face value. *Keeton v. State,* 749 S.W.2d at 868, citing *Ex parte Branch,* supra.

In *Vargas,* we established the standard of review for *Batson* claims. Extending the prior "clearly erroneous standard" announced by this Court in *Whitsey v. State,* we adopted the "clear error standard of review" as explained by the United States Supreme Court in *Hernandez v. New York,* supra. We found that "[d]eference to the trial court findings on the issue of discriminatory intent makes particular sense in this context because, as was noted in *Batson,* the finding will 'largely turn on evaluation of credibility' ". *Vargas v. State,* 838 S.W.2d at 554, quoting *Hernandez v. New York,* supra. In applying this standard, a determination is made whether the trial judge's decision is supported by the record so that it is not clearly erroneous. *Vargas v. State,* 838 S.W.2d at 554. This includes a review of the voir dire, the racial makeup of the venire, the prosecutor's neutral explanations, and appellant's rebuttal and impeaching evidence. *Id.,* at 554.

■ In *Keeton,* we presented a non-exclusive list of factors which tend to show that the reasons or explanations given by the prosecutor are merely sham or pretext. *Keeton v. State,* 749 S.W.2d, at 868. Presence of these factors also weighs against the legitimacy of a race-neutral explanation for the use of peremptory strikes. *Id.* Additionally, this type of evidence also tends to show that the State's reasons for using peremptory strikes are not actually supported by the record or are an impermissible pretext. Such evidence may include "an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically." *Id.,* quoting *Ex parte Branch,* 526 So.2d 609, at 624 (Ala.1987); *Whitsey v. State,* 796 S.W.2d, at 714–15. "For instance, an assumption that teachers as a class are too liberal *without any specific questions* having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror." *Keeton v. State,* 749 S.W.2d, at 868, quoting *Ex parte Branch,* 526 So.2d, at 624 (emphasis added).

In *Whitsey,* a prospective juror was eliminated from the venire because she was a teacher. *Whitsey v. State,* 796 S.W.2d, at 714. During a *Batson* hearing, the prosecutor in *Whitsey* stated that he elected to do so because he believed that teachers tend to be liberal. *Id.,* at 716. However, the prosecutor did not ask this person any questions to determine whether in reality the individual juror was liberal. *Id.* We found this to be "a classic example of 'an explanation based on a group bias where the group trait is not found to apply to the challenged juror specifically.' " *Id.,* quot-

ing *Keeton v. State*, 749 S.W.2d, at 866. Consequently, this and other evidence was used to find that the State's race-neutral explanations were facially contrived to avoid admitting acts of discrimination. See *Whitsey v. State*, 796 S.W.2d, at 716.

■ An explanation for striking a prospective minority juror is also suspect when the state does not strike persons with same or similar characteristics. *Keeton v. State*, 749 S.W.2d, at 866; *Whitsey v. State*, 796 S.W.2d, at 714. If such suspicion exists and the prosecutor makes a designation in his notes which panel members are black, it may be inferred that facially valid reasons for using peremptory strikes are actually a sham. See *Whitsey v. State*, 796 S.W.2d, at 714–16.

In *Whitsey*, the prosecutor spent six to eight hours reviewing the voir dire transcript before coming up with explanations for his strikes. *Whitsey v. State*, 796 S.W.2d, at 716. The prosecutor stated that he struck two prospective black jurors because their age was the approximately the same as the defendant. *Id.*, at 715. The only notes the prosecutor made on the juror information sheets regarding these two jurors consisted of noting their race with the letter "B". *Id.* However, six other white venireman who were also close to the age of the defendant were not struck. *Id.* The disparate treatment of the two black venirepersons, combined with the notations on the juror information sheets, was used by this Court to conclude that the State's explanations were actually fabricated to conceal acts of discrimination. See *Id.*, at 716.

■ Several of the "suspect" reasons which indicate non-race-neutral reasons for striking venire members are present in the instant case. First of all, the prosecutor believed that venireperson no. 33 was either a college student, college professor, or a teaching assistant. Because he felt that persons in the collegiate environment are liberal, the prosecutor struck this potential juror. He did not, however, ask any questions to confirm that this prospective juror

had any of the liberal characteristics he associated with this type of person. The State, therefore, applied a group bias without inquiring whether it applied to her specifically. We find that the State's occupation-based explanation for striking venireperson no. 33 was not legitimate.

■ The prosecutor further stated that he struck venireperson no. 33 because she was unemployed. During the *Batson* hearing, defense counsel pointed out that while most prospective jurors indicated their employment status, non-black prospective jurors 16, 18, and 26 failed to state whether they were employed.[3] The State did not strike these persons. We find that this was a classification used by the State to eliminate prospective juror no. 33 which was not uniformly applied to the non-black veniremembers.

From our review, we hold that the trial court's findings concerning the prosecutor's use of a peremptory challenge against prospective juror no. 33 are not supported by the record. The explanations are insufficient as a matter of law to rebut appellant's prima facie showing of racial discrimination in the jury selection process. A finding of purposeful discrimination is a finding of fact based largely upon the trial judge's evaluation of credibility and a reviewing court should accord such a finding great deference; however, after reviewing the record in the light most favorable to the trial judge's findings, we cannot grant such deference under these circumstances.

We hold that appellant has established that the State utilized at least one peremptory challenge based solely on race. The exclusion of even one member of appellant's race from the jury panel for racial reasons invalidates the entire jury selection process. *Whitsey v. State*, 796 S.W.2d, at 716. Since this denied him due process in the jury selection process, appellant is entitled to a new trial.

Initially, we reversed the Court of Appeals and remanded the instant case to the trial court to conduct a *Batson* hearing.

---

**3.** Cf. *Vargas v. State*, 838 S.W.2d at 557 (defendant who did not present impeaching evidence

to the trial court during voir dire or *Batson* hearing was not entitled to rely on it later).

*Emerson v. State,* 820 S.W.2d 802 (Tex.Cr. App.1991). It was a mistake not to have returned this cause to the Court of Appeals so they could order the trial court to conduct a *Batson* hearing. Since we have the record in this Court and have reviewed it, we will dispose of the matter here. The judgment of the trial court is reversed and the cause remanded to that court.[4]

---

**4.** Presiding Judge McCormick and Judge Clinton would remand this cause to the Court of Appeals to determine if there was *Batson* error in the trial court.