Kenneth Louis DOBY, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–93–573–CR.

Court of Appeals of Texas,
Corpus Christi.

Sept. 14, 1995.

**80**

Terrence Gaiser, Houston, for appellant.

John B. Holmes, Jr., District Attorney, Houston, Calvin A. Hartmann, Assistant District Attorney, Houston, Scott A. Durfee, Assistant District Attorney, Houston, for appellee.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

Kenneth Louis Doby appeals his conviction for burglary of a motor vehicle with intent to commit theft. He was sentenced to thirty years imprisonment. By five points of error, appellant contends that the State used its peremptory strikes in a racially discriminatory manner, that the trial court erred in rejecting appellant's *Batson* challenge to the State's strikes, and that appellant's equal protection rights were violated by the actions of the State and the trial court. We affirm.

In point of error one, appellant asserts that the trial court committed reversible error by failing to sustain appellant's *Batson* challenge. Appellant argues that the venire included five black panelists and that the state used its peremptory challenges to remove the only four black panel members that were in a position to serve on the jury. The fifth black panel member was panelist number 40, who was not reached. Appellant concedes that two of the four were arguably struck for race-neutral reasons, in that both had relatives or close friends who had trouble with the law. We focus on whether the trial court erred in rejecting appellant's *Batson* motion as to the remaining two jurors, Constance Jones and Deborah Jones.

### The Batson Hearing

After appellant made his objection to the State's peremptory challenges, the trial court held a hearing at which the prosecutor testified. The prosecutor stated that he struck Deborah Jones because she "want[ed a] break in." In this burglary, entry to the vehicle was not accomplished by force; the car door was unlocked. As for Constance Jones, the prosecutor stated that he struck her because she was unemployed and because she had "problems with stuff . . . stuff I was asking her." The prosecutor admitted that he did not strike other, non-minority panel members who were also unemployed.

Once the prosecutor had offered his reasons for striking Deborah Jones and Constance Jones, the defense attorney argued:

[T]he State has struck the only four black jurors that were eligible to be on this panel out of five we have reached, and on at least one instance, it is shown that the treatment—a person with the same characteristic was not struck. At this time I would move for a Batson challenge and that this jury panel be struck.

The prosecutor then responded "I provided reasons why I struck these jurors. It has nothing to do with their race and that's all I have to say." The court then denied defense counsel's motion to strike the jury panel.

### Rule of Law and Standard of Review

A party may not strike prospective jurors because of their race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986); TEX.CODE CRIM.PROC. ANN. art. 35.261 (Vernon 1989); *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim.App.1988). When a party appeals the outcome of a *Batson* hearing, the standard of review calls for reversal of trial court rulings that are "clearly erroneous." *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App.1992); *Whitsey v. State*, 796 S.W.2d 707, 717 (Tex.Crim.App.1989) (opinion on State's motion for rehearing). To determine whether the trial court's ruling was in fact "clearly erroneous," we examine the entire record, in the light most favorable to the court's ruling, in order to determine if we are "left with the 'definite and firm conviction that a mistake has been committed.'" *Hill*, 827 S.W.2d at 865 (citing *U.S. v. Fernandez*, 887 F.2d 564, 567 (5th Cir.1989)); *Camacho v. State*, 864 S.W.2d 524, 528 (Tex.

Crim.App.1993). If supported by the record, including the voir dire, the prosecutor's explanation of his use of a peremptory challenge, the rebuttal by appellant and impeaching evidence, the decision of the trial court will not be clearly erroneous. *Camacho*, 864 S.W.2d at 528 (citing *Vargas v. State*, 838 S.W.2d 552 (Tex.Crim.App.1992)).

■ To prevail on this point of error, appellant must establish that the reasons offered by the State for the peremptory challenges were merely pretextual and a cover for a racially-motivated challenge. *Hill*, 827 S.W.2d at 870. In examining the standard of review of a *Batson* finding, the Court of Criminal Appeals, in *Whitsey v. State*, quoted extensively from the United States Supreme Court in *Anderson v. Bessemer City*, as follows:

> In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot

be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

*Whitsey*, 796 S.W.2d at 722 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

### Review of the Evidence

■ In this case, the juror information cards are part of the record. Appellant asked that the juror information cards be admitted as evidence during the hearing and for purposes of the hearing. It was apparent from the voir dire questioning that the attorneys used the cards. During the *Batson* hearing, the prosecutor testified that Constance Jones was unemployed, a fact which was only available from the juror information cards. The trial court had the information; we may consider it. *Vargas*, 838 S.W.2d at 557.

Appellant contends that Deborah Jones did not "want a break in" as the State claims. Our review of the record is complicated by the court reporter's reference to all panel members as "a juror" when the panel member responded to questioning. Because of that complication, it is difficult to tell whether Ms. Jones agreed with the juror who thought breaking in meant forcible entry rather than entry without permission.[1] The

---

1. Q: Ms. Spencer, can I start with you, please?
   A Juror: Sure.
   Q: What do you think of when you think of break into? What comes to mind when you think of break into, let's say, a house?
   A Juror: To enter without permission.
   Q: All right. To enter without permission she said. Does everybody hear that? Mr. Kennedy?
   A Juror: Yes.
   Q: What do you think of when you think about breaking into something, lets say, break into a house?
   A Juror: Forcibly enter a premise.
   Q: Forcibly enter a premise. How do you mean forcibly?
   A Juror: Break the window or crash the door.
   Q: Okay. Who else agrees with Mr. Kennedy? Ms. Jones, is it Ms. Jones?
   A Juror: Yes.
   Q: What do you think? Do you agree with more of the entering or the forcible entry into a building?

A Juror: Well, its with force, I am agreeing with her, she said breaking, enter without permission, more or less, without force, in other words.

\* \* \* \* \* \*

Q: Right. And that's what I want to know. Would you force or would you require me to show that there had been forcibly breaking into that house for a burglary?
A Juror: That's right.
Q: Does anybody agree with Mr. Kennedy that they would want to see forcible breaking into a house? There has got to be something else. I know I would have a while back. Anybody else? What's your name?
A Juror: Hernandez.
Q: Mr. Hernandez.... Who else out there agrees with him, they are going to want to see some breaking into that house? Mr. Streusand; is that right? ... You want to see some breaking into the house?
A Juror: Juror nods head.

prosecutor's concern that she did so agree was related to the facts of this case, which were that appellant entered the automobile without permission although he did not use force. Three other panel members also wanted a break in. Kennedy was excused by agreement; the State struck Sutton. And although Finnell wanted a break in, the State did not strike her; the prosecutor testified that appellant struck her.

The trial judge was in a far better position to know whether the State's explanation of its reason for striking Deborah Jones was credible. We cannot say that the record contradicts his assessment.

The prosecutor explained that Constance Jones was unemployed and had problems with the questions he asked. He did not elaborate and appellant did not question his assertion. Because the reporter did not identify any of the responding jurors, we are unable to ascertain the questions to which Constance Jones responded. The only time she was questioned individually, her answers concerned an incomplete blank on her juror information card dealing with whether she had ever been a complainant in a criminal proceeding.

■ A panel member may legitimately be struck based on a hunch, for failure to make eye contact, inattentiveness, or other nonquantifiable characteristics. *See Vargas,* 838 S.W.2d at 555. In addition, peremptory strikes based on a panel member's employment status are allowed. *See Earhart v. State,* 823 S.W.2d 607, 625 (Tex.Crim.App. 1991).

When questioned about Jones' unemployment status, the prosecutor admitted that he did not base his decision solely on that fact, but he denied that race was a factor. Reviewing the juror information cards, we find that there were four unemployed women in the first 38 panel members. Panel member 38 appears to be the last person seated on the jury.

The other unemployed female panel members included Frances Cernosek, panelist 7, a 56 year-old housewife with one child. Constance Jones, panelist 18, was 47 years old, had three children, and wrote "not working at this time." Mary Madrazo, panelist 22, was 58 years old, and drew lines through the sections of her card for children, employment, home and business phone. Shirley Finnell, panelist 26, was 65 years old, had three children and is retired. Panelist 29, Evangeline Brady, was 41, had three children and showed her occupation as housewife. Of these four, the State struck only Constance Jones. Brady, Cernosek, and Finnell served on the jury. Although the record does not contain a final jury list, the State believed appellant struck Finnell. In his brief, however, appellant asserts that he did not.

Appellant questioned the prosecutor about why he did not strike Ms. Madrazo, when she was also unemployed. The prosecutor explained that he thought she would be a good juror for the State, although he challenged her for cause. He also testified that he believed appellant would strike her and that he generally doesn't strike people he thinks the defense will strike.

The United States Supreme Court recently revisited *Batson* and clarified the proper steps in a *Batson* hearing. In *Purkett v. Elem,* — U.S. —, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the Supreme Court reiterated that the burden of proving purposeful discrimination rests always with the party challenging his opponent's use of peremptory strikes. *See Elem,* — U.S. at —, 115 S.Ct. at 1771. Furthermore, the Court determined that it is error for an appellate court to combine the second step of a *Batson* inquiry, in which a challenged party offers race-neutral reasons for the challenged peremptory strikes, with the third step, in which the court determines whether the challenging party has carried his burden of proving purposeful discrimination. *Id.* It is therefore improper for a court to require that the offered race-neutral explanation be "plausible" or "at least minimally persuasive." *Id.* According to the Court,

---

Q: Because I am here to tell you—yes, ma'am.
A Juror: Shirley.
Q: What number are you?

A Juror: 26.
Q: Anybody else?

The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the *facial validity* of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Id.* (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion)) (emphasis added).

■ In the present case, the prosecutor's explanations for striking Dorothy Jones and Constance Jones were facially valid, and are therefore deemed race-neutral. The appellant bore the burden of persuasion after the prosecutor offered these race-neutral reasons. After the prosecutor offered his explanations for his peremptory strikes, appellant restated his prima facie case and stated that in at least one instance another juror with similar characteristics (presumably Ms. Madrazo) was not struck. The trial court apparently found that appellant did not successfully carry his burden of persuasion, and overruled his *Batson* motion.

■ Although an explanation for striking a prospective minority juror may be suspect when the State does not strike persons with same or similar characteristics, *Keeton v. State,* 749 S.W.2d 861, 866 (Tex.Crim.App. 1988); *Whitsey,* 796 S.W.2d at 714, this simple fact alone does not lead us to believe that the offered race-neutral reason for striking Constance Jones was necessarily a sham. Something more is needed to overcome the presumption that the trial court's ruling was correct. *See Emerson v. State,* 851 S.W.2d 269, 274 (Tex.Crim.App.1993) (determining that an offered explanation was a pretext when other jurors with the same characteristic were not stricken *and* the prosecutor had made a designation in his notes which jurors were black). Without such evidence leading us to a "definite and firm conviction that a mistake has been committed," we cannot say that the trial court's decision was clearly erroneous. Appellant's first point of error is overruled.

By his second and fourth points of error, appellant asserts that the trial court committed reversible error by denying his motion to strike the jury and summon a new panel based on the prosecutor's violation of the *Batson* rule. Following the reasoning set out above regarding appellant's first point of error, this argument lacks merit. Appellant's second and fourth points of error are overruled.

By his third and fifth points of error, appellant asserts that his right to equal protection under the Fourteenth Amendment to the United States Constitution was violated when the prosecutor peremptorily struck Constance Jones and Deborah Jones on the basis of race. As discussed in the first point of error, appellant has not carried his burden of demonstrating that the prosecutor purposefully discriminated against either Deborah Jones or Constance Jones on the basis of race. Appellant's third and fifth points of error are overruled.

Having overruled all of appellant's points of error, the judgment is AFFIRMED.