NUMBER 13-02-250-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







WALTER CHARLES GIBSON, JR.
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the Criminal District Court


of Jefferson County, Texas.






O P I N I O N



Before Chief Justice Valdez and Justices Rodriguez and Castillo


Opinion by Justice Castillo



 A jury convicted appellant Walter Charles Gibson, Jr. of the second-degree
felony offense of possession of a controlled substance. It sentenced him to twenty
years imprisonment in the Institutional Division of the Texas Department of Criminal
Justice and imposed a $10,000 fine. We reverse and remand. Without filing a motion
for rehearing, the State filed a petition for discretionary review, arguing that this Court
made an error of fact concerning the proceedings in the trial court. On review of the
record, we sua sponte withdraw our opinion of August 5, 2003 and substitute the
following opinion. See Tex. R. App. P. 50. The following is now our opinion. 

I. ISSUES ON APPEAL


 Represented by appointed appellate counsel, Gibson claims the State exercised
its peremptory challenges of two jurors solely on the basis of race. Counsel certifies
that four additional issues requested by Gibson do not present an arguable basis for
reversal. See Anders v. California, 386 U.S. 738, 744-45 (1967). 

II. APPLICABLE APPELLATE RULES


 Gibson timely filed a notice of appeal on April 8, 2002. The rules of appellate
procedure governing how appeals proceed in criminal cases were amended effective
January 1, 2003. Generally, rules altering procedure do not fall within the prohibition
in the Texas Constitution against retroactive application of laws that disturb vested,
substantive rights. See Tex. Const. art. I, § 16; see also Ibarra v. State,
11 S.W.3d 189, 192 (Tex. Crim. App. 1999). Therefore, this Court applies the
current rules of appellate procedure to this appeal. We may not affirm or reverse a
judgment or dismiss an appeal for formal defects or irregularities in appellate procedure
without allowing a reasonable time to correct or amend the defects or irregularities. 
Tex. R. App. P. 44.3. We also are prohibited from affirming or reversing a judgment
or dismissing an appeal if the record prevents the proper presentation of an appeal and
can be corrected by the trial court. Tex. R. App. P. 44.4(a). Accordingly, we abated
the appeal on July 21, 2003 and ordered a supplemental record to include, in
compliance with rule 25.2(a)(2), the trial court's certification of Gibson's right of
appeal. See Tex. R. App. P. 25.2(a)(2). We received a supplemental record on
August 4, 2003 that includes the trial court's certification of Gibson's right of appeal. 
We now turn to the merits. 

III. BATSON ANALYSIS


 By two issues, Gibson challenges the trial court's determination that the State's
reasons for exercising peremptory challenges against juror 11 and juror 15 were race
neutral. Gibson asserts that the trial court's ruling violated the Equal Protection Clause
of the Fourteenth Amendment to the United States Constitution and was erroneous
under Batson v. Kentucky, 476 U.S. 79 (1986). The record provides the complete voir
dire examination and exercise of peremptory challenges by the parties. The trial court
acknowledged Gibson's Batson motion and found that Gibson had timely raised his
challenge by objecting before the jury was sworn. After a hearing, the trial court
denied Gibson's motion. 

 At trial, the State presented three witnesses. One eye-witness, a police officer,
testified he observed Gibson during a routine traffic stop of a car in which Gibson was
a passenger. The officer said he saw Gibson hide a plastic baggie between his seat
and the console. The State also presented a videotape of the traffic stop. (1) Two other
official witnesses testified to the chain of custody of the plastic baggie and a
laboratory analysis of the contents as being cocaine. Gibson testified in his own
defense. He denied the cocaine belonged to him. 

A. The Burdens


 The Equal Protection Clause prohibits the discriminatory use of peremptory
challenges based on race. Id. at 96; see Tex. Code Crim. Proc. Ann. art. 35.261(a)
(Vernon 1989). (2) A three-step burden-shifting analysis applies to an accused's race-based Batson challenge. First, the accused must make a prima facie showing of racial
discrimination, which is a burden of production, thereby raising an inference that the
prosecutor peremptorily struck panelists because of their race. Ford v. State,
1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Second, in recognition of the fact that
peremptory challenges constitute a jury selection practice that permits invidious
discrimination, the burden of production shifts to the prosecution to respond with a
neutral explanation for the strike. Id.; Young v. State, 826 S.W.2d 141, 145 (Tex.
Crim. App. 1991). If the prosecution offers a neutral explanation, the third step
requires the trial court to decide if the accused proved that the challenged strike was
not neutral. Ford, 1 S.W.3d at 693; Young, 826 S.W.2d at 145. The ultimate burden
of persuasion in this third step remains with the accused, who must show, by
reference to the context of the voir dire or other relevant facts, that the explanation
offered by the prosecutor is not neutral or is a pretext. Purkett v. Elem,
514 U.S. 765, 767-68 (1995); Guzman v. State, 85 S.W.3d 242, 254 (Tex. Crim.
App. 2002); Ford, 1 S.W.3d at 693. 

 A preponderance-of-the-evidence standard supplies the burden of proof in a
Batson challenge. Williams v. State, 767 S.W.2d 872, 874 (Tex. App.-Dallas 1989,
pet. ref'd) (en banc). The exercise of a peremptory challenge in a disparate manner on
the basis of a single factor may support a claim of discriminatory intent. Esteves v.
State, 849 S.W.2d 822, 824 n.2 (Tex. Crim. App. 1993) (3); Earhart v. State,
823 S.W.2d 607, 624 (Tex. Crim. App. 1991). Where the prosecutor offers only one
reason for a challenged strike, the accused may discharge the burden of persuasion on
a claim of disparate treatment on the basis of race to rebut the State's facially neutral
explanation by showing that the State struck a panelist of one race but did not strike
a panelist of a different race who presented the same reason. See Chamberlain v.
State, 998 S.W.2d 230, 236 (Tex. Crim. App. 1999) (characterizing as "real rebuttal"
in disparate-questioning Batson claim example "that no white venire member with
similar views were ignored by the State."). A facially neutral explanation for striking
a venire panelist may be suspect when the State does not strike persons with the
same or similar characteristics. Doby v. State, 910 S.W.2d 79, 83 (Tex. App.-Corpus
Christi 1995, pet. ref'd).

B. The Standard of Review


 In an appeal involving a Batson challenge, we apply a clearly erroneous standard
of review. Hill v. State, 827 S.W.2d 860, 865-66 (Tex. Crim. App. 1992) (plurality
op.). A ruling is clearly erroneous when, after searching the record, we form the
definite and firm conviction that a mistake has been made. Id. In reviewing the trial
court's ruling on a disparate-treatment Batson claim, we do not determine whether the
prosecutor's explanations were credible but, rather, whether the trial court's ruling was
supported by the record and therefore not clearly erroneous. Purkett, 514 U.S.
at 769; see Guzman, 85 S.W.3d at 255; see also Young, 826 S.W.2d at 146. 

 After a prosecutor gives nondiscriminatory reasons for striking minority panelists
from the venire, the trial judge must determine whether the facially neutral
explanations are contrived to avoid admitting acts of discrimination. Emerson v. State,
851 S.W.2d 269, 273 (Tex. Crim. App. 1993). This must be done because a
prosecutor, although not intentionally discriminating, may try to find reasons other
than race to challenge a minority juror, when race may be the primary factor in
deciding to strike the juror. Id. The trial judge as supervisor of the voir dire is in a
position to readily perceive discrepancies during the jury selection process. Id. 
Evaluation of the prosecutor's state of mind based on demeanor and credibility lies
peculiarly within the province of the trial court. Id. The trial judge may not, however,
accept at face value the specific reasons given by the prosecutor. Id. Disparate
treatment alone does not lead necessarily to the conclusion that the offered
explanation was a pretext. Doby, 910 S.W.2d at 83. Rather, something more may
be needed to overcome the presumption that the trial court's ruling was correct. Id. 
 C. The Scope of Review


 We examine the record to determine if the State met its burden of production
to provide a neutral explanation for its challenge of the venire panelist in question. 
Wright v. State, 832 S.W.2d 601, 604 (Tex. Crim. App. 1992); Williams v. State,
804 S.W.2d 95, 102 (Tex. Crim. App. 1991). We review the record, including the
voir dire examination, the prosecutor's explanations, and the appellant's rebuttal and
impeachment evidence, in a light most favorable to the trial court's ruling. Id.; see
Guzman, 85 S.W.3d at 245 (reviewing record in "mixed motives" challenge). We
accord great deference to the trial court's ruling. Jasper v. State,
61 S.W.3d 413, 421-22 (Tex. Crim. App. 2001); see Guzman, 85 S.W.3d at 255
(remanding for hearing to permit trial court to determine role of gender, offered by
prosecutor as one of several reasons for strike, in exercise of peremptory challenge). 
We determine, in light of the record, if the accused rebutted the prosecution's neutral
explanation in such a manner that it can be inferred that the prosecutor engaged in
purposeful discrimination. Williams, 804 S.W.2d at 101. 

 In its initial analysis of disparate-treatment Batson claims, the court of criminal
appeals held that an accused, in meeting the burden of persuasion, was not required
to make comparisons of the panelists at the trial level to have the evidence considered
on appeal. Young, 826 S.W.2d at 146. Next, the court of criminal appeals examined
an assertion of disparate treatment where the appellant "did not present the trial judge
with any comparison, general or detailed, of unchallenged white vernirepersons and
the black venirepersons who were struck." Vargas v. State, 838 S.W.2d 552, 556
(Tex. Crim. App. 1992), op. withdrawn and substitute opinion issued, 1992 Tex. Crim.
App. LEXIS 173 (Sept. 16, 1992) ("Vargas I "). (4) The court of criminal appeals
reaffirmed in Vargas I its holding in Young that to have comparison evidence
considered on appeal, a defendant is not required to either: (1) "request that the trial
judge make [a] finding upon a comparison analysis"; or (2) "offer in evidence testimony
from jury selection supporting such an analysis." However, the Vargas I court 
distinguished evidence outside the voir dire record from jury selection testimony:

 The comparison "evidence" upon which appellant relies is at least partly
based upon the juror information cards, which were not mentioned or
offered into evidence by either side. It is not proper for an appellate
court reviewing a trial court's decision on a matter to rely upon
information that was not admitted as evidence at the Batson hearing in
the trial court. Second, to allow an appellate court to rely upon such
information undermines the standard of review for a Batson issue which
gives great deference to the trial court. 

Id. The court of appeals had relied on the juror information cards to identify disparate
treatment by the prosecutor. Id. The court of criminal appeals held that "[a]n
appellate court may not reverse a trial court's finding based upon information that was
not introduced into evidence or elicited before the trial judge during the voir dire." Id.
at 557. Accordingly, the court went on to find that "the appellate record also reveals
that some evidence of the kind relied upon by Appellant for comparison with the
racially neutral explanations given by the prosecutor does appear in the record of jury
selection." Id. The court remanded the case to the court of appeals for
"reconsideration of Appellant's Batson complaint in a manner not inconsistent with this
opinion." Id. On remand, the court of appeals did not consider the juror information
cards in comparing the prosecutor's facially neutral explanation for treating two
panelists of different races differently. Vargas v. State, 859 S.W.2d 534, 535 (Tex.
App.-Houston [1st Dist.] 1993, pet. ref'd) ("Vargas II "). Rather, the court of appeals
looked to the voir dire record to conclude:

 There is nothing other than racial motive in this record, however, to
explain the fact that a black paralegal, [juror A], was struck, while a
white paralegal seated near the top of the venire, [juror B], was not
struck. 


Id. In reversing the trial court for Batson error, the court of appeals cited a concurring
opinion in Vargas I :

 If occupation were really at the heart of the prosecutor's objections to
[juror A], then surely he would have struck [juror B] first. As [juror B]
and [juror A] had the same offending occupation, the only remaining
difference between [juror A] and [juror B] is race. Thus the prosecutor's
reason for striking [juror A] was not racially neutral but pretextual to
avoid admitting discrimination. Therefore, there is enough evidence in
the record to prove the prosecutor exercised at least one of his
peremptory challenges in violation of Batson. 

Id. (quoting Vargas I, 838 S.W.2d at 560, Baird, J., Miller J., and Overstreet, J.,
concurring). The end result of Vargas I and Vargas II was that an accused could rely
on a comparison analysis on appeal and was not required, to preserve a disparate-treatment Batson claim, to either: (1) request that the trial court consider a comparison
analysis; or (2) offer evidence in support of the comparison analysis unless the
information on which the appellant sought to rely was not presented to the trial court
through testimony during jury selection. Vargas I, 838 S.W.2d at 557. 

 Next, the court of criminal appeals re-examined the error-preservation question
in Ford. Ford, 1 S.W.3d at 693. Without discussing either Young or Vargas, the court
of criminal appeals held in 1999 that an accused, to preserve a disparate-treatment
Batson issue on appeal, must claim at trial that the prosecution disparately treated
similarly situated panelists. Id. (citing Purkett, 514 U.S. at 769-70). 

 Thus, Gibson's Batson challenge requires that we determine the extent to which
Purkett controls our analysis of the claimed error as well as the extent to which Ford
overrules Young and Vargas. We turn to the record. 

D. The Record


1. The Prima Facie Case


 At the close of jury selection, the following colloquy took place between the trial
court and defense counsel:

 THE COURT: Now, you have a Batson challenge, [Defense
Counsel]. Would you tell me the jurors that you challenge or believe the
State struck for racial reasons? I'd like the number only, please, and I
will take judicial notice that the Defendant is - the Defendant's race. 


 [DEFENSE COUNSEL]: Your Honor, that would go to Juror
Number 6, 11, 14 and 15.


 THE COURT: Thank you, sir.


 Will the State give me a race neutral reason why you struck Juror
Number 6. . . ?


 [PROSECUTOR]: Judge, I struck [Juror 6] among other reason
because he's a substance abuse counselor.


 THE COURT: Okay. 


 [PROSECUTOR]: And he told us as much during voir dire. 

 The State contends on appeal that Gibson did not meet his burden of showing
a prima facie case of discrimination in the prosecutor's exercise of the State's
peremptory challenges, arguing that the record does not reflect either Gibson's race
or that of the venire panelists. We disagree. A record of the relative races of the
defendant and the challenged venire panelists is no longer required. See Hutchinson
v. State, 86 S.W.3d 636, 639 n.2 (Tex. Crim. App. 2002) (noting that Batson
challenges in criminal cases are not limited to venire panelists who share defendant's
race). 

 Further, participants in voir dire have an opportunity to make visual
observations. Wamget v. State, 67 S.W.3d 851, 858 (Tex. Crim. App. 2001) (per
curiam) (quoting Mejia v. State, 616 A.2d 356, 362-63 & n.8 (Md. 1992)). Both
sides are equally aware of the criteria involved in a race-based Batson challenge. 
Wamget, 67 S.W.3d at 858. Thus, when a party does not challenge the other side's
factual conclusion, made on the record, that a particular venire panelist is a member
of a racial group against whom the use of a discriminatory peremptory strike is alleged,
the fact is deemed established. Id. Here, the State did not object at trial that Gibson
had not met his burden to prove a prima facie case of racial discrimination in the
State's peremptory challenges of the four identified jurors. Nor did the State object
that the identified jurors are not members of a cognizable racial group. On this record,
we find it deemed that the challenged jurors are members of a cognizable racial group.
See Wamget, 67 S.W.3d at 858; see also Fletcher v. State, 848 S.W.2d 761, 763
(Tex. App.-Corpus Christi 1993, no pet.) (finding that prosecutor's statement
regarding challenged juror's criminal history supported racially neutral explanation in
absence of appellant's objection or controverting evidence).

 Nonetheless, the trial court did take judicial notice of Gibson's race. Then, the
trial court required the State to provide race-neutral explanations for striking the four
jurors identified by defense counsel as the subjects of Gibson's race-based Batson
motion. On hearing the explanations, the trial court denied Gibson's motion. Once the
State offers an explanation for striking a contested panelist, and the trial court rules
on the ultimate question of intentional discrimination, the issue of whether the
defendant made a prima facie case of discrimination is moot and not subject to
appellate review. See Malone v. State, 919 S.W.2d 410, 412 (Tex. Crim.
App. 1996). By asking the prosecutor for race-neutral explanations for striking the
challenged jurors, the trial court implicitly found that Gibson satisfied his burden of
proving a prima facie case of race-based peremptory challenges. See id. Accordingly,
we do not address the State's argument that Gibson did not meet his burden of
showing a prima facie case of discrimination. See id. 

2. The State's Explanations


 Gibson's first issue addresses the prosecutor's peremptory challenge of juror 11
In response to questioning by the trial court, the State provided its reason for striking
juror 11: 

 [PROSECUTOR]: Judge, I struck [Juror 11] because she had
spoken up and said that she would require more than one witness to
testify. 


 THE COURT: All right.


 [DEFENSE COUNSEL]: Your Honor, in response to that, [Juror 7]
stated the same thing, that he would need more evidence than one
witness though he was not struck by the State.


 THE COURT: All right. Can you answer that, please?


 [PROSECUTOR]: I can, Judge. He qualified his answer - And we
can go back to the record. But he qualified his record at one point and
said, but if there is more evidence I would be okay. And, in fact, there
is more evidence in this case. 


 I can't state strongly enough, Judge - I don't want to - We want
to give Mr. Gibson a fair trial and if there's anything here that's not fair -


 THE COURT: Well, that's what I'm trying to find out. You struck
Number 11 for the reason you stated and did not strike Number 7 for the
reason you stated; is that correct?


 [PROSECUTOR]: That is correct with the caveat I just added.


* * *



 THE COURT: Okay, I'm going to deny the Batson challenge. . . . 
He's given race neutral reasons. Yes, sir.


 [DEFENSE COUNSEL]: Just as a request to clarify your ruling. 
Their reason for striking [Juror 11], that he needed more evidence and
the similar and same reason [Juror 7] was not struck, is that - has he
given a sufficient race neutral reason to strike [Juror 11]? 


 THE COURT: In my judgment he has. They're pre-emptory [sic]
challenges and he's given a race neutral reason. 


 When challenged by defense counsel about the prosecutor's different treatment
of juror 7 and juror 11, the State did not object that the two jurors are members of the
same racial group. The prosecutor had the same opportunity to visually observe the
two jurors during voir dire and correct any conclusions reached by defense counsel. 
See Wamget, 67 S.W.3d at 858. Accordingly, on this record we deem it established
that juror 7 is a member of a different racial group than juror 11. See id. To decide
otherwise would require a conclusion that the trial court, for no apparent reason, 
questioned the prosecutor regarding disparate treatment of two jurors who are
members of the same racial group. We decline the State's invitation to do so. 

 3. The Voir Dire Context


 The voir dire record shows several colloquies between the prosecutor and
juror 11 and juror 7, beginning in the following context:

 [PROSECUTOR]: . . . Let's talk about that. I took - Stephanie,
my wife and I took a car trip this weekend. We took her car and she had
a bunch of her stuff in the car and she had - we brought some
magazines with us. That's what we like to do when we travel, okay. 
And I brought a couple of salt water fishing magazines and she's got
these Women's Day magazines, all right. And they're around the car,
you know. I intended to bring that Salt Water Sportsman with me, okay. 
I wanted to have that to read. That's what I like to read, okay. I didn't
intend to have the Women's Day magazines with me, all right. 


 Did I knowingly possess those Women's Day magazines?


 UNKNOWN JURORS: Yes. 


 [PROSECUTOR]: Of course I did. Of course I did. What about if
I were to borrow her car and those magazines are still in there and I pick
up some of my buddies for lunch, okay. They start ripping me on these
magazines; what are you doing with these sewing magazines and stuff
like that. Yet, I'm still in possession of those magazines; correct?


 UNKNOWN JUROR: Yes.


 [PROSECUTOR]: Of course I am. 


 One other thing, there is a belief on the street I think that if you
can get rid of something - The first thing you said about possession was
that if it was on your person. There is a belief that if you can -


 [DEFENSE COUNSEL]: Your Honor, I'm going to object to a belief
that's on the street unless it's submitted into evidence. 


 THE COURT: Overruled. 


 [PROSECUTOR]: There's a belief that if you can get something
away from your person that somehow you don't possess that item
anymore, okay. 


 [PROSECUTOR]: And under the individual facts and circumstances
of a case, that may be so - maybe so. 


 [PROSECUTOR]: [Juror 11]. 


 [JUROR 11]: Yes.


 [PROSECUTOR]: You had a reaction to what I just said. So, what
do you think? 


 [JUROR 11]: What is the question?


 [PROSECUTOR]: About if - about the act of trying to get
something or hiding something - getting rid of something. 


 [JUROR 11]: It's still yours. You have it. You still have it. It's
still in your possession. 


* * *


 [PROSECUTOR]: Have any of y'all been held up before or
assaulted? Unfortunately, a lot of things like that happen with only one
witness. Of course, it's perfectly within the law. 


 Anybody on the first row think that, even though you believe him
beyond a reasonable doubt, you want something else?


 Anybody.


 [JUROR 7]: I do. 


 [PROSECUTOR]: You feel like you would?


 [JUROR 7]: I could believe in a man's testimony, if he's a
policeman, but still people make mistakes. And I have to have a little
more evidence. 


 [PROSECUTOR]: Okay. That's fine. I appreciate your honesty. 


 [PROSECUTOR]: Okay. Anybody on the second row feel like
[Juror 7], you need some additional evidence?


 [UNKNOWN JUROR]: I probably would. 


 [PROSECUTOR]: You think you would?


 [UNKNOWN JUROR]: Yeah. 


 [PROSECUTOR]: [Juror 11]? 


 [JUROR 11]: Because he was not a eye-witness; correct?


 [PROSECUTOR]: No. He's an eye-witness. He's an eye-witness.


 [JUROR 11]: Okay. He's an eye-witness? 


 [PROSECUTOR]: Yes, ma'am. We'll talk about that in just one
second.


 [JUROR 11]: Oh, okay. 


 [PROSECUTOR]: We're not going to talk about it right now. 


 Thus, juror 7, juror 11, and an unknown juror responded to the prosecutor's
question regarding their need for additional evidence if only one witness testified. 
They were the only panelists to do so. The record does not show any additional voir
dire on the issue of eye-witness testimony. 

 Later in the voir dire, defense counsel elicited the following information from
juror 7:

 [DEFENSE COUNSEL]: Okay. [Juror 7], you stated that you may
need more evidence than the testimony of one officer? 


 [JUROR 7]: Yes. 


 [DEFENSE COUNSEL]: If the Judge were to - At the end of this
and you were picked and the Judge were to give you what is called the
Charge and these are all of the items; that mere presence alone is not -
is not sufficient to convict somebody and whatever law you're supposed
to apply in this case; would you follow that law? Say you had no more
evidence than what the officer stated or would you say, no, I'm going to
need more evidence before I can vote?


 [JUROR 7]: Well, you know what I'm saying, people make
mistakes and sometimes in the process of doing things you make
mistakes. And if he's got more evidence to show and if I can see it. But
if there's no more evidence and I have to take just the word of a
policeman or anyone person, I have my doubts. 


 [DEFENSE COUNSEL]: Okay, but would you put the State to it's
[sic] burden to prove beyond a reasonable doubt? 


 [JUROR 7]: Yes. 


 [DEFENSE COUNSEL]: So you would follow the law in this case?


 [JUROR 7]: Yes, I would. 


 A later exchange between defense counsel and juror 7 regarding a defendant's
right to remain silent also occurred:

 [DEFENSE COUNSEL]: And [Juror 7] again, you would require the
Defendant to speak?


 [JUROR 7]: Yeah, I believe he needs to speak up for hisself and
explain his part. I want to hear all stories. 


 Neither the State nor the defense challenged any of the panelists for cause. The
record shows that no individual voir dire took place. Juror 7 took a seat on the jury
that convicted Gibson. Juror 11 did not. 

E. Analysis


 The facially neutral explanation offered by the prosecutor in Purkett was the
following: 

 I struck [juror] number twenty-two because of his long hair. He had long
curly hair. He had the longest hair of anybody on the panel by far. He
appeared to me to not be a good juror for that fact, the fact that he had
long hair hanging down shoulder length, curly, unkempt hair. Also, he
had a mustache and a goatee type beard. And juror number twenty-four
also has a mustache and goatee type beard. Those are the only two
people on the jury . . . with the facial hair . . . . And I don't like the way
they looked, with the way the hair is cut, both of them. And the
mustaches and the beards look suspicious to me.


Purkett, 514 U.S. at 766. The Supreme Court reversed the court of appeals for
focusing "on the reasonableness of the asserted nonracial motive . . . rather than the
genuineness of the motive" in analyzing whether the prosecution met the burden
shifted to it by the accused's prima facie showing of discriminatory peremptory
challenges. Id. at 769. 

 Here, the State said it struck juror 11 for speaking up about needing more
evidence than one witness. Gibson then challenged the "genuineness" of that
explanation, not its "reasonableness," by pointing out that the prosecutor had not
struck juror 7 for the same reason. In response, the explanation the State gave for not
striking juror 7 was: "He qualified his answer - And we can go back to the record. 
But he qualified his record at one point and said, but if there is more evidence I would
be okay. And, in fact, there is more evidence in this case." Thus, we find Purkett
inapposite here. The record shows that Gibson challenged the "genuineness" of the
prosecutor's facially neutral explanation, not its "reasonableness." See id. at 769. 

 We also distinguish Gibson's challenge at trial from the facts in Ford. Ford,
1 S.W.3d at 693. The voir dire record in Ford showed confusion in the prosecutor's
recollection between what the two compared jurors had said. Id. However, as noted
by the court of criminal appeals, the appellant in Ford did not complain at trial that the
prosecution treated similarly situated panelists differently on the basis of race. Id.
at 692. By contrast, in response to the prosecutor's facially neutral explanation for
striking juror 11, Gibson presented to the trial court that the prosecutor had not struck
juror 7, who had responded to the prosecutor's question regarding a need for
additional evidence in the same way as juror 11. When the prosecutor responded that
juror 7 had "qualified his answer" and was therefore rehabilitated, Gibson repeated to
the trial court, "Their reason for striking [Juror 11], that he needed more evidence and
the similar and same reason [Juror 7] was not struck, is that - has he given a
sufficient race neutral reason to strike [Juror 11]?" 

 Further distinguishing this case from the facts in Ford, the record here shows
that no confusion between what the two jurors had said was possible. Neither of the
two jurors responded exactly in the manner recalled by the prosecutor. Further, to the
extent juror 7's answer to defense counsel's questions can be interpreted to mean
juror 7 qualified his response by saying he would be okay if the State presented more
evidence, juror 11's response similarly can be interpreted to mean she qualified her
answer by saying she would be okay if the sole witness was an eye-witness. 

 The record shows that Gibson presented to the trial court a comparison of the
prosecutor's treatment of juror 11 and juror 7. The only thing further Gibson could
have done with regard to his objection that the prosecutor treated juror 11 and juror 7
differently would have been to put the voir dire record itself into evidence. We read
Ford as silently overruling Young and the first component of Vargas. Compare Ford,
1 S.W.3d at 693 (requiring presentation to trial court of Batson claim based on
comparison analysis to preserve issue) with Young, 826 S.W.2d at 146 (holding that
appellant could raise disparate-treatment Batson challenge for first time on appeal) and
Vargas I, 838 S.W.2d at 556 (holding that appellant was not required to: (1) request
that trial court consider comparison analysis; or (2) offer evidence in support of
comparison analysis unless information on which appellant relies was not presented
to trial court through testimony during jury selection). The appellant in Ford had not
presented the disparate-treatment Batson claim to the trial court. Ford, 1 S.W.3d
at 693. Consequently, Ford did not reach the issue of whether an appellant who does
preserve the issue may rely on the voir dire record on appeal to demonstrate the
comparison. Id. We do not read Ford as silently overruling the second component of
Vargas by requiring the challenger to put a record of the voir dire questioning into
evidence to discharge the burden of persuasion in a claim of disparate treatment of
similarly situated panelists. 

 We decline to extend Ford beyond the facts in that case, that is, beyond the
requirement that the accused must challenge at trial a prosecutor's facially neutral
explanation for a strike by pointing to a similarly situated panelist not struck by the
State. See Ford, 1 S.W.3d at 693. We find that by pointing out and then reiterating
to the trial court that the prosecutor had stuck a juror of one race but did not strike
another juror of a different race for "the similar and same reason," Gibson discharged
his burden of persuasion. See Chamberlain, 998 S.W.2d at 236 (giving example of
"real rebuttal" in disparate-questioning claim). We hold that Gibson, having discharged
his burden of persuasion at trial, is entitled to rely on the record of voir dire testimony
on appeal to prove he rebutted the prosecution's neutral explanation in such a manner
that it can be inferred that the prosecutor engaged in purposeful discrimination. (5) 
See id. 

 In addition to the voir dire record, the record on appeal shows that the State
presented only one witness to link Gibson to the cocaine, an eye-witness police
officer. Even interpreting juror 7's remarks as indicating he would be okay if the State
produced more evidence than one witness, in fact the State did not produce more than
one witness to link Gibson to the cocaine. Thus, the record does not support the
prosecutor's statement during voir dire that the State had more evidence than a single
witness as his explanation for not striking juror 7. Moreover, after informing juror 11
during voir dire that the only witness was an eye-witness, the prosecutor did not ask
any follow-up questions about the effect of that fact on her reservation about one
witness. Finally, the voir dire record shows that juror 7, in response to defense
counsel's question, indicated he would require a defendant to testify. However, the
record also shows that juror 11 agreed with the prosecutor on an issue specifically
relevant to the State's drug possession case against Gibson. Accordingly, the record
shows that both jurors answered questions about voir dire subjects other than the one-witness issue in a manner favorable to the State. (6) Therefore, to the extent "something
more" than disparate treatment may be required to rebut the prosecutor's facially
neutral explanation, this record presents more than prosecutorial confusion in
attributing one venire panelist's response to another, as was the case in Ford. See
Ford, 1 S.W.3d at 693; see also Doby, 910 S.W.2d at 83. The record shows that the
State struck a juror of one race for indicating one specific reservation and did not strike
a juror of another race who expressed the same specific reservation. The record does
not support the State's only explanation for treating the two panelists differently. 

 As in Vargas, the State had to bypass juror 7 to strike juror 11. See Vargas II,
859 S.W.2d at 535. If a need for additional evidence was really at the heart of the
State's objection to juror 11, then surely the State would have struck juror 7 first. 
See id. Juror 7 and juror 11 had voiced the same reservation about one witness. As
discussed above, the record shows that the only remaining difference between juror 7
and juror 11 is race. See id. Thus, the prosecutor's reason for striking juror 11 was
not racially neutral. See id. The record on appeal contains enough evidence to prove
the prosecutor exercised at least one peremptory challenge in violation of Batson. 
See id. We find, in light of this record, that Gibson met his burden to rebut by a
preponderance of the evidence the prosecution's neutral explanation. See Williams,
804 S.W.2d at 101. We have formed the definite and firm conviction that a mistake
has been made. See Hill, 827 S.W.2d at 865-66. 

F. Conclusion


 We hold that the trial court's denial of Gibson's Batson challenge is not
supported by the record and is, therefore, clearly erroneous. See Wright, 832 S.W.2d
at 605. We sustain Gibson's first issue. Further, Batson error is not subject to a harm
analysis. Sparks v. State, 68 S.W.3d 6, 12 (Tex. App.-Dallas 2001, pet. ref'd). 
Finally, the exclusion of even one panelist from the jury on an unconstitutional basis
invalidates the entire jury selection process. Whitsey v. State, 796 S.W.2d 707, 716
(Tex. Crim. App. 1989) (op. on reh'g) (plurality op.). Accordingly, we do not reach
Gibson's remaining issues. See Tex. R. App. P. 47.1. We reverse and remand for a
new trial. 

 

 ERRLINDA CASTILLO

 Justice


Chief Justice Valdez not participating. 


Publish.

Tex. R. App. P. 47.2(b).


Opinion delivered and filed

this 6th day of October, 2003.

1. The videotape is not part of the record. 
2. The prohibition against discrimination in the exercise of peremptory challenges also applies to
litigants who exercise a strike based on the juror's: (1) gender (J.E.B. v. Alabama ex rel. T.B.,
511 U.S. 127, 146 (1994); Fritz v. State, 946 S.W.2d 844, 847 (Tex. Crim. App. 1997)); and
(2) ethnicity and nationality (Hernandez v. New York, 500 U.S. 352, 355 (1991); Wamget v. State,
67 S.W.3d 851, 857 (Tex. Crim. App. 2001) (per curiam)). Guzman v. State,
85 S.W.3d 242, 245 (Tex. Crim. App. 2002). Gibson asserts racial discrimination. 
3. We note that the court of criminal appeals regards footnotes in its opinions as dictum, not
holdings of the court. Edwards v. State, 813 S.W.2d 572, 582 n.1 (Tex. App.-Dallas 1991, pet. ref'd)
(en banc) (Baker, J., dissenting) (citing Young v. State, 826 S.W.2d 141, 145 n.5 (Tex. Crim.
App. 1991)). 
4. In an apparent publication error, the substitute opinion is not published. However, we note that
the published version differs from the unpublished version in only one significant respect, which is to
delete language from the published version that affirmed the case, contrary to the actual holding, which
reversed and remanded the case to the court of appeals. As a consequence, the published version,
despite its withdrawal, has been cited more than one hundred and eighty times to date. We do so as
well. 
5. Batson and its progeny require the trial court to note and give weight to subtle clues that
disclose the prosecutor's intent. Somerville v. State, 792 S.W.2d 265, 269 (Tex. App.-Dallas 1990,
pet. ref'd). Our holding today should not be read as concluding that the prosecutor in this case engaged
in conscious disparate treatment. 
6. We note that a prosecutor, in the exercise of the State's duty to uphold the integrity of the
jury system, may challenge for cause a potential "State's juror" venire panelist who cannot be fair and
impartial to the defendant. Guerra v. State, 771 S.W.2d 453, 467 (Tex. Crim. App. 1988). Here, the
prosecutor did not articulate bias in favor of the State as a reason for striking juror 11 or as a reason
for not striking juror 7.