NUMBER 13-02-250-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG



WALTER CHARLES GIBSON, JR.,                                       Appellant,

v.

STATE OF TEXAS,                                                             Appellee.




On appeal from the Criminal District Court
of Jefferson County, Texas.




       MEMORANDUM OPINION




Before Chief Justice Valdez and Justices Rodriguez and Castillo
Memorandum Opinion by Justice Castillo
 
         A jury convicted appellant Walter Charles Gibson, Jr. of the second-degree
felony offense of possession of a controlled substance.


 The jury sentenced him to
twenty years imprisonment in the Institutional Division of the Texas Department of
Criminal Justice and imposed a $ 10,000 fine. On original submission, we held that
the trial court's denial of Gibson's Batson challenge was not supported by the record
and was, therefore, clearly erroneous. See Gibson v. State, 117 S.W.3d 567, 580
(Tex. App.–Corpus Christi 2003), rev'd 144 S.W.3d 530 (Tex. Crim. App. 2004);
Batson v. Kentucky, 476 U.S. 79, 95-96 (1986). The Texas Court of Criminal
Appeals reversed, concluding that we erroneously applied the clearly erroneous
standard of review. Gibson v. State, 144 S.W.3d 530, 531 (Tex. Crim. App. 2004). 
Consistent with the mandate of the Court of Criminal Appeals, we consider Gibson's
remaining issues on remand. We conclude that Gibsons's appeal on remand is
frivolous and without merit. We affirm. I. REMAINING ISSUES ON APPEAL
         Aside from his two Batson issues, Gibson's court appointed appellate counsel
certifies that four additional issues requested by Gibson do not present an arguable
basis for reversal. The issues are whether: (1) trial counsel was ineffective because
he (a) did not relay the State's plea bargain offer, (b) did not advise that prior felony
convictions could be used, and (c) called Gibson's mother to testify at the penalty
phase; and (2) the cocaine admitted in evidence was the substance collected at the 
time of his arrest. We construe the brief as an Anders brief. See Anders v.
California, 386 U.S. 738, 744-45 (1967).
II. ANDERS BRIEF
         Gibson’s court-appointed counsel has identified in the brief four issues which 
he has concluded are without merit for purposes of an appeal. Counsel has certified
that Gibson requested the issues be raised on appeal. Counsel has shown, in
compliance with Anders, 386 U.S. at 744-45, and High v. State, 573 S.W.2d 807
(Tex. Crim. App. 1978) that: (1) he has searched the complete appellate record in this
case; (2) in his opinion, there is no reversible error; (3) he served Gibson with a copy
of the brief; (4) he informed Gibson by letter accompanying the appellate brief that he
was unable to find any points of error on which to file a brief; (5) he informed Gibson
of his right to examine the entire appellate record for the purpose of filing a pro se
brief; and (6) he arranged for Gibson to inspect the appellate record in this cause. 
Counsel has demonstrated he notified Gibson of his right to review the record and file
a pro se brief if he desires to do so.


 See Anders, 386 U.S. at 744-45. Gibson has
not filed a pro se brief in response to his counsel's Anders assessment of the four
issues. See McMahon v. State, 529 S.W.2d 771, 772 (Tex. Crim. App. [Panel Op.]
1975).
         A frivolous appeal brief must demonstrate why there are no arguable grounds
to be advanced by providing reference to both legal precedent and pages in the record. 
See High, 573 S.W.2d at 812. The brief of Gibson's counsel does advance grounds
of error appellant “wishes to raise,” but concludes they are without merit. While
arguable grounds of error, if there are any, should be advanced by counsel for an
indigent appellant as required by Anders, that case should not be interpreted as
requiring appointed counsel to make arguments he would not consider worthy of
inclusion in a brief for a paying client or to urge reversal if in fact he can find no merit
in the appeal. Id. We hold that counsel’s brief is not the “conclusory statement”
involved in Anders. Id. 
         We have reviewed the record, as we must. Penson v. Ohio, 488 U.S. 75, 80
(1988). As part of our review under Anders, we consider the entire record. See
Gearhart v. State, 122 S.W.3d 459, 464-65 (Tex. App.–Corpus Christi 2004, pet.
ref'd). 
III. BACKGROUND



         On the evening of June 16, 1997, while on criminal interdiction patrol as part
of the Jefferson County Drug Task Force, Beaumont police officer Ricky Anderson and
Texas Ranger Aaron Burleson stopped a 1989 Buick on the interstate. The vehicle
lacked a rear license plate and a tail light. The traffic stop was recorded by videotape.


 
Gibson was the passenger in the vehicle. The driver consented to the search of his
vehicle. Anderson saw Gibson "stuffing something in between the seats. It looked
like a plastic bag of some sort." Officer Anderson asked Gibson if he could search the
item. Gibson reached over and depressed the button to open the trunk. At
Anderson's request, Gibson exited the vehicle. Anderson started the search at the
area where he saw Gibson place the plastic bag. He found two "cookies" inside the
plastic bag. He field-tested the substance and determined it was cocaine. The cocaine
was admitted in evidence. Anderson testified the substance was not in "cookie" form
because, in part, the lab crushed it to analyze it and, in part, during transportation or
storage it crumbled.
         Claire Eaglin, a property technician, testified as to the chain of custody of the
cocaine Anderson seized. Charlyn Voight, a forensic analyst with the Jefferson
County Regional Crime Lab, testified that the substance tested positive for cocaine. 
She testified that the testing procedure involves crushing the individual items so that
the final test is a mixture of all the individual pieces. The cocaine weighed 49.03
grams.
         After the State rested, Gibson's counsel requested a record outside the presence 
of the jury. The colloquy between Gibson and his counsel follows:
[Counsel]: Mr. Gibson, you realize we have spoken regarding you taking
the stand on your own behalf. You realize that?
 
[Gibson]: Yeah.
 
[Counsel]: You remember talking about that. And is it your wish to take
the stand and testify on your own behalf?
 
[Gibson]: Yeah. I want to get up there and represent myself.
 
[Counsel]: Okay. And do you realize that when you take the stand that
all your prior felonies and crimes of moral turpitude will be entered
against you.
 
[Gibson]: Yeah, but I want it known to the Court that I'm a first
offender. I've only been convicted once.
 
[Counsel]: Okay. But do you realize that they are going to try to prove
other felonies against you?
 
[Gibson]: But that's what I'm saying. I did my time.
 
[Counsel]: But do you realize that?
 
[Gibson]: Yeah, I realize all of it, but I still want the jury to hear
everything.
 
[Counsel]: And you realize it is my advise [sic] that you do not take the
stand?
 
[Gibson]: Yeah, but I'm saying I'm a first offender.
 
[Counsel]: Answer my question.
 
[Gibson]: Yeah, I want to take the stand.
 
[Counsel]: Okay. You wish to take the stand and waive your right to
remain silent?
 
[Gibson]: Yeah. I want to take the stand. 
         A break in the proceedings occurred to allow a bench conference to consider
Gibson's request to change his plea to no contest. At the conclusion of the bench
conference, Gibson decided not to change his plea. Gibson testified he realized he had
the right to remain silent and wished to waive the right. He admitted he had reviewed
the videotape and the discovery in his case. According to Gibson, the driver and
owner of the vehicle, Kenneth Christy, picked him up in Louisiana the day before the
arrest. Christy is Gibson's cousin. Gibson was staying with his sister in Louisiana. 
The two traveled to Houston and stayed with Christy's mother. In Houston, the two
parted when Christy left to visit his children. On the return trip, they were stopped. 
He denied knowing Christy had drugs in the car. At the time of the stop, Gibson was
asleep. When he woke up, he saw the "dope" on the console. He admitted he
"pushed the stuff down" and the police saw him. 
         On cross-examination, Gibson admitted, "We both possessed it at the time." 
Gibson added:
They dropped [Christy's] case just on his word that–him saying that it
was mine. It's his car. He's the owner of the car. The owner supposed
to know what's in his car at all times. So, by him telling the police that
. . . it was mine or whatever, he's saying immediately that he knew that
he was in possession of a controlled substance from the start.

Later, Gibson denied he possessed the cocaine. Gibson admitted he had been
convicted of seven felonies and the sentences ran concurrently, including possession
and distribution of cocaine, attempted armed robbery, aggravated assault, and escape. 
Three of the charges were cocaine related. He admitted telling the prosecutor out of
the presence of the jury, "I made the statement about the cocaine that they had. I told
them that the cocaine that they had was not the kind of amount of cocaine that
they're saying that I had. That it was a lot less." He admitted saying that the cocaine 
"[did not] weigh 49.03 grams." Gibson testified that the cocaine weighed "no more
than 20 grams." He testified that the cocaine admitted in evidence was not the
substance seized from the vehicle. He admitted that Christy had no criminal record. 
Gibson admitted he fled the state after bonding out of jail. 
         During the penalty phase, the State adduced evidence of Gibson's flight and
apprehension. Records of Gibson's convictions were admitted in evidence. Called by
the defense, Gibson's mother testified that he had learning disabilities as a child and
started getting in trouble after his father left the family and the parents divorced. 
Because she had to work to meet the family's needs, she believed her absence from
home contributed to Gibson's troubles with the law. She asked the jury for leniency
in punishment. She acknowledged that Gibson "was on the run." 
IV. DISPOSITION
         The trial court appointed substitute appellate counsel on the State's petition for
discretionary review. The record contains no additional briefing. We proceed with our
Anders review. 
A. Independent Review of the Record
         
         Since this is an Anders case, we independently review the record for error. See
Ohio, 488 U.S. at 80; see also Gearhart, 122 S.W.3d at 464-65; Ybarra v. State, 93
S.W.3d 922, 926 (Tex. App.–Corpus Christ 2002, no pet.).
1. The Indictment
         The indictment properly alleges the offense of possession of a controlled
substance. See Tex. Health & Safety Code Ann. § 481.115(a) (Vernon 2003). Even
if errors did exist in the indictment, the error could not be raised on appeal because
Gibson did not file a pre-trial motion alleging any error in the indictment. See Tex.
Code Crim. Proc. Ann. art. 1.14(b) (Vernon Supp. 2004-05); Studer v. State, 799
S.W.2d 263, 268 (Tex. Crim. App. 1990) (en banc). We find no arguable error in the
indictment. 
2. Pre-Trial Motions
         The record reflects Gibson's defense counsel filed numerous motions including
motions for discovery and to suppress evidence. During the pretrial hearing, the trial
court denied Gibson's Batson challenge and motion to suppress evidence of extraneous
matters and flight. The trial court ruled that all "the standard and regular routine
motions are granted as required by law." The trial court considered the motions, heard
the arguments of counsel, and ruled. The Batson ruling has been affirmed in the Court
of Criminal Appeal's opinion in Gibson, 144 S.W.3d at 531. The record does not
reflect that the trial court abused its discretion in its rulings adverse to Gibson. Rulings 
favorable to Gibson present nothing for review. See Tex. R. App. P. 33.1. We find no
arguable error in the trial court's pre-trial rulings.
 
3. Voir Dire
         A review of the voir dire examination shows that venire members responded to
questioning by the prosecutor and defense counsel. Neither the State nor Gibson
raised any challenge for cause. Thus, the trial court could not have erroneously ruled. 
See Johnson v. State, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001) (en banc); see also
Allen v. State, 54 S.W.3d 427, 428 (Tex. App.–Waco 2001, pet. ref'd). Further, the
trial court did not limit Gibson's questioning of the jury. See Nunfio v. State,
808 S.W.2d 482, 485 (Tex. Crim. App. 1991). The trial court properly overruled the
Batson challenge. See Gibson, 144 S.W.3d at 531. We find no arguable error in the
voir dire.
4. Opening Statements

         A prosecutor's opening statement is authorized by article 36.01(a)(3) of the
Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 36.01(a)(3)
(Vernon Supp. 2004-05). The opening statement should inform the jury of the nature
of the accusation and the facts that the State expects to prove. See Taylor v. State,
947 S.W.2d 698, 706 (Tex. App.–Fort Worth 1997, pet. ref'd) (per curiam). If
improper statements were made, an appellate court must determine whether the
impropriety constitutes reversible error. Herrera v. State, 915 S.W.2d 94, 97 (Tex.
App.–San Antonio 1996, no writ.). We view the improper statements in conjunction
with the record as a whole, and ascertain whether the statement was so prejudicial
as to deny an appellant a fair trial. Id. Similarly, the defendant has the right to make
an opening statement. See Tex. Code Crim. Proc. Ann. art. 36.01(b) (Vernon Supp.
2004-05). 
         The State presented its opening statement. Gibson, by choice, did not.
Gibson's counsel objected to one statement during the culpability phase on the basis
of admissibility of the evidence of Gibson's flight and apprehension. The trial court
sustained the objection. However, Gibson admitted at trial he fled and did not return
voluntarily. Harm, if any, was cured because the evidence came in elsewhere. See
Tex. R. App. P. 44.2; see also Valle v. State, 109 S.W.3d 500, 509 (Tex. Crim. App.
2003). We find no arguable error in the prosecution's opening statement. 
5. Sufficiency of the Evidence
a. Standards of Review
(1). Legal Sufficiency
         A legal-sufficiency challenge calls for appellate review of the relevant evidence
in the light most favorable to the prosecution. Jackson v.Virginia, 443 U.S.
307, 319 (1979); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004);
Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (en banc); Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). We consider all the
evidence that sustains the conviction, whether properly or improperly admitted or
whether introduced by the prosecution or the defense, in determining the legal
sufficiency of the evidence. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim.
App. 2001). 
         In a jury trial, legal sufficiency is measured against the elements of the
offense as defined by a hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury
charge is one that "accurately sets out the law, is authorized by the indictment, does
not unnecessarily increase the State's burden of proof or unnecessarily
restrict the State's theories of liability, and adequately describes the particular
offense for which the defendant was tried." Id. A hypothetically correct jury charge 
would not simply quote from the controlling statute. Gollihar v.State, 46 S.W.3d 
243, 254 (Tex. Crim. App. 2001). Its scope is limited by "the statutory elements of
the offense . . . as modified by the charging instrument." Fuller v. State, 73 S.W.3d
250, 254 (Tex. Crim. App. 2002) (en banc) (Keller, J., concurring); Curry v. State, 30
S.W.3d 394, 404 (Tex. Crim. App. 2000). When a statute lists more than one
method of committing an offense, and the indictment alleges some, but not all, of the
statutorily listed methods, the State is limited to the methods alleged. Fuller, 73
S.W.3d at 255; Curry, 30 S.W.3d at 404. This standard of legal sufficiency ensures
that a judgment of acquittal is reserved for those situations in which there is an actual
failure in the State's proof of the crime. Malik, 953 S.W.2d at 240. We then
determine if any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Jackson, 443 U.S. at 319; Johnson, 23 S.W.3d
at 7. 
         If we reverse a criminal case for legal insufficiency following a jury trial, we 
reform the judgment to reflect conviction for a lesser offense only if: (1) we find that
the evidence is sufficient to support conviction of the lesser offense; and (2) a jury
charge on the lesser offense was either submitted or requested but denied. Collier v.
State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999) (plurality op.) (discussing
circumstances under which court of appeals may reform judgment following jury trial
to reflect conviction for lesser offense); Bigley v. State, 865 S.W.2d 26, 27-28 (Tex.
Crim. App. 1993) (en banc) (clarifying same). Otherwise, we vacate the judgment of
conviction for legal insufficiency and order a judgment of acquittal. Swearingen, 101
S.W.3d at 95. 
(2). Factual Sufficiency
         We also measure the factual sufficiency of the evidence against a 
hypothetically correct jury charge. Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.—Corpus Christi 2002, pet. ref'd). We are constitutionally empowered to review
the judgment of the trial court to determine the factual sufficiency of the evidence
used to establish the elements of the charged offense. Johnson, 23 S.W.3d at 6. The
Texas Court of Criminal Appeals has restated the factual sufficiency standard of
review:
There is only one question to be answered in a factual sufficiency
review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt? However,
there are two ways in which the evidence may be insufficient. First,
when considered by itself, evidence supporting the verdict may be too
weak to support the finding of guilt beyond a reasonable doubt. Second,
there may be both evidence supporting the verdict and evidence contrary
to the verdict. Weighing all the evidence under this balancing scale, the
contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met, so the
guilty verdict should not stand. This standard acknowledges that
evidence of guilt can "preponderate" in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable
doubt. Stated another way, evidence supporting guilt can "outweigh"
the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard. 

Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). A clearly wrong
and unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the
conscience," or "clearly demonstrates bias." Prible v. State, No. AP-74,487, 2005
Tex. Crim. App. LEXIS 110, at *16-*17 (Tex. Crim. App. January 26, 2005). 
         When the State bears the burden of proof, the proof of guilt is factually
insufficient if it is so obviously weak as to indicate that a manifest injustice has
occurred or if it is greatly outweighed by contrary proof. Zuliani v. State, 97 S.W.3d
589, 593-94 (Tex. Crim. App. 2003). In determining the factual sufficiency of the
elements of the offense, we view all the evidence neutrally, not through the prism of
“the light most favorable to the prosecution.” Johnson, 23 S.W.3d. at 6-7 (citing
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). However, we
approach a factual-sufficiency review with appropriate deference to avoid substituting
our judgment for that of the fact finder. Id. Our evaluation should not intrude
substantially on the fact finder’s role as the sole judge of the weight and credibility
given to witness testimony. Id. We must consider the most important evidence that
appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).
         We always remain aware of the fact finder’s role and unique position, a position
we are unable to occupy. Johnson, 23 S.W.3d at 9. Exercise of our authority to
disagree with the fact finder’s determination is appropriate only when the record
clearly indicates our intervention is necessary to stop manifest injustice. Id. 
Otherwise, we accord due deference to the fact finder’s determinations, particularly
those concerning the weight and credibility of the evidence. Id. Absent exceptional
circumstances, issues of witness credibility are for the jury, and we may not substitute
our view of the credibility of a witness for the constitutionally guaranteed jury
determination. Johnson, 23 S.W.3d at 9. 
         Every fact need not point directly and independently to the accused’s guilt. 
Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A conclusion of
guilt can rest on the combined and cumulative force of all the incriminating
circumstances. Id. We reverse a judgment of conviction only if proof of guilt is so
obviously weak and manifestly unjust or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Prible, 2005
Tex. Crim. App. LEXIS 110, at*17. 
         In conducting a factual sufficiency review, we review all the evidence. Cain v.
State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). In the opinion, we "show our
work" when we consider and address the appellant’s main argument for urging
insufficiency of the evidence. Tex. R. App. P. 47.1; Sims, 99 S.W.3d at 603 ("A
proper factual sufficiency review must include a discussion of the most important and
relevant evidence that supports the appellant's complaint on appeal."). This practice
benefits the parties, maintains the integrity of the justice system, and improves
appellate practice. Sims, 99 S.W.3d at 603. 
         If we reverse a criminal case for factual insufficiency, we vacate the judgment
of conviction. Clewis, 922 S.W.2d at 133-34. We remand for a new trial a criminal
case reversed for factual insufficiency so a second jury has the chance to evaluate the
evidence. Swearingen, 101 S.W.3d at 97.
b. Elements of the Offense–Possession of a Controlled Substance
         In possession of controlled substance cases, the two following evidentiary
requirements must be satisfied: first, the State must prove the defendant exercised
actual care, control and management over the contraband; and, second, that he had
knowledge that the substance in his possession was contraband. King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995) (en banc). The term "controlled substance"
includes the "aggregate weight of any mixture, solution, or other substance containing
a controlled substance." Tex. Health & Safety Code Ann. § 481.002(5) (Vernon
Supp. 2004-05). The State has to prove only that the aggregate weight of the
controlled substance mixture, including adulterants and dilutants, equals the alleged
minimum weight. Melton v. State, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003). 
Expert witness testimony regarding the nature of the controlled substances based upon
visual observation is proper evidence. See Tex. R. Evid. 702; see Martinez v. State, 
22 S.W.3d 504, 508 (Tex. Crim. App. 2000) (en banc).
         The mere presence of the accused at a place where contraband is located does
not make him a party to joint possession, even if he knows of the contraband's
existence. Oaks v. State, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982). Whether
the theory of prosecution is sole or joint possession, the evidence must affirmatively
link the accused to the contraband in such a manner, and to such an extent that a
reasonable inference may arise that the accused knew of the contraband's existence
and that he exercised control over it. Travis v. State, 638 S.W.2d 502, 503 (Tex.
Crim. App. 1982). When an accused is not in exclusive possession and control of the
place where contraband is found, it cannot be concluded he had knowledge or control
over the contraband unless there are additional independent facts and circumstances
that affirmatively link him to the contraband. Brown v. State, 911 S.W.2d 744, 748
(Tex. Crim. App.1995) (en banc). Similarly, when the contraband is not found on the
accused's person, or it is not in the exclusive possession of the accused, additional
facts and circumstances must link the accused to the contraband. Menchaca v. State,
901 S.W.2d 640, 651 (Tex. App.–El Paso 1995,pet. ref'd). The affirmative links
doctrine is the appropriate means of applying the Jackson rationality standard of
appellate review. Jackson, 443 U.S. at 319; Martinets v. State, 884 S.W.2d 185,
188 (Tex. App.–Austin 1994, no pet.). Various factors may be considered when
determining whether the evidence is sufficient to affirmatively link the accused with
the contraband. The number of the factors is not as important as the logical force the
factors have in establishing the elements of the offense. Jones v. State, 963 S.W.2d
826, 830 (Tex. App.–Texarkana 1998, pet. ref'd); Hurtado v. State, 881 S.W.2d 738,
743 (Tex. App.–Houston [1st Dist.] 1994,pet. ref'd); Gilbert v. State, 874 S.W.2d
290, 298 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd). 
         Gaps in the chain of custody generally go to the weight and credibility of the
evidence in question, not its admissibility. Lagrone v. State, 942 S.W.2d 602, 617
(Tex. Crim. App. 1997) (en banc); Stoker v. State, 788 S.W.2d 1, 10 (Tex. Crim. App.
1989) (en banc); Alvarez v. State, 857 S.W.2d 143, 147 (Tex. App.–Corpus Christi
1993, pet. ref'd). Tagging an item of physical evidence at the time of its seizure and
then identifying it at trial based upon the tag will support admission of the evidence
barring any showing of tampering or altercation. Stoker, 788 S.W.2d at 10. 
                                          c. Sufficiency Analysis
(1). Legal Sufficiency
         Viewed in the light most favorable to the verdict, the testimony of the arresting
officer and technicians established the proper chain of custody of the cocaine from its
seizure at the traffic stop to its appearance in the courtroom on the day of Gibson's 
trial. The arresting officer testified to each of the elements of the offense of
possession of a controlled substance. He viewed the plastic bag in the vehicle, and
saw Gibson take the bag in his hand and conceal it. The police technician and forensic
analyst testified about the chain of custody. The forensic analyst testified that the
substance was cocaine and weighed 49.03 grams. Further, Gibson admitted that he
saw the controlled substance, took it, and concealed it. Gibson admitted that the
arresting officer saw him take the bag in his hand. Gibson admitted he fled the state
after his arrest. See Foster v. State, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989)
(en banc) (inference of guilt may be drawn from flight). 
         Viewing the relevant evidence favorably to the verdict, we conclude that any
rational trier of fact could have found beyond a reasonable doubt the essential
elements of the offense. See Jackson, 443 U.S. at 319; see also Johnson, 23
S.W.3d at 7; Malik, 953 S.W.2d at 240.
(2). Factual Sufficiency
         Additional evidence, viewed in a neutral light, showed that Gibson denied the
cocaine was his. He denied knowing his cousin Christy had the cocaine in the vehicle. 
Gibson admitted he became aware of the controlled substance when he awoke after
the traffic stop. Finally, Gibson admitted he had been convicted before for drug-related
offenses. Viewing the relevant evidence in a neutral light, favoring neither the
prosecution nor Gibson, and with appropriate deference to the jury's credibility
determinations, we conclude: (1) the evidence supporting the verdict is not too weak
to support the jury's finding of guilt beyond a reasonable doubt; and (2) the weight of
the evidence contrary to the verdict is not so strong that the State could not have met
its burden of proof. Zuniga, 144 S.W.3d at 484-85; Adi, 94 S.W.3d at 131.          The evidence is legally and factually sufficient to sustain the conviction. 
Accordingly, we find no arguable error in the sufficiency of the evidence. 
 
6. The Charge
         The record does not show that Gibson objected to the charge. Thus, to be
reversible, any error would have to constitute egregious harm. Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g). We find no
arguable egregious error in the charge. 
7. Closing Argument
         Gibson did not object to the State's closing argument during either phase of the
trial. Thus, Gibson did not preserve any error. See Cockrell v. State, 933 S.W.2d 73,
89 (Tex. Crim. App. 1996) (en banc); see also Limas v. State, 941 S.W.2d 198, 203
(Tex. App.–Corpus Christi 1996, pet. ref'd). We find no arguable error in the
prosecutor's jury argument. 
8. Punishment Phase
         The record shows that Gibson objected to extraneous evidence including flight
after the guilty verdict. The trial court overruled the objection. The standard of review
for a trial court's ruling under the rules of evidence is abuse of discretion. Sauceda v.
State ,129 S.W.3d 116, 120 (Tex. Crim. App. 2004). If the ruling was correct on any
theory of law applicable to the case, in light of what was before the trial court at the
time the ruling was made, then we must uphold the judgment. Id. Because Gibson
admitted during the culpability phase that he fled once he posted the bond, we cannot
conclude that the trial court abused its discretion in allowing the evidence of flight.
         The record does not establish that Gibson objected to the imposition of
punishment. We conclude that he did not preserve any error as to the sentence
imposed by the jury. See Rhoades v. State, 934 S.W.2d 113, 120 (Tex. Crim.
App. 1996) (en banc). Moreover, the sentence assessed was within the statutorily
permissible range and was based on admissible evidence introduced during the trial.


 
See Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). We find no
arguable error in the sentencing proceedings. 
9. Ineffective Assistance of Counsel
         Gibson asserts that counsel was ineffective because he (a) did not relay the
State's plea bargain offer, (b) did not advise that prior felony convictions could be
used, and (c) called Gibson's mother to testify at the penalty phase. 
         A claim of ineffective assistance of counsel must be firmly supported in the
record. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996) (per
curiam) (en banc). An appellant must show: (1) his counsel's performance fell below
an objective standard of reasonableness, based on prevailing professional norms; and
(2) there is a reasonable probability that, but for the counsel's unprofessional errors,
the result of the proceeding would be different. McFarland v. State, 845 S.W.2d 824,
842 (Tex. Crim. App. 1992) (en banc). When determining the validity of a defendant's
claim of ineffective assistance of counsel, we must be highly deferential to trial
counsel and avoid the distorting effects of hindsight. Ingham v. State, 679 S.W.2d
503, 509 (Tex. Crim. App. 1984) (en banc). We presume counsel's performance was
the result of sound or reasonable trial strategy. Strickland v. Washington, 466 U.S.
668, 688 (1984); see Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App.
1991) (en banc). We will not base a finding of ineffectiveness on speculation. See
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc); Gamble
v. State, 916 S.W.2d 92, 93 (Tex. App.–Houston [1st Dist.] 1996, no pet.). 
         When the record is silent regarding the motivation of counsel's tactical
decisions, the defendant cannot overcome the strong presumption that counsel acted
reasonably. Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most
cases, the record on direct appeal is insufficient to review claims of ineffective
assistance of counsel. See Ortiz v. State, 93 S.W.3d 79, 88-89 (Tex. Crim. App.
2002) (en banc) ("If counsel's reasons for his conduct do not appear in the record and
there is at least the possibility that the conduct could have been legitimate trial
strategy, we will defer to counsel's decisions and deny relief on an ineffective
assistance claim on direct appeal."); Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).
         After the State rested its case during the culpability phase of the trial, Gibson's 
counsel asked for leave of court and was granted the opportunity to make a record
before Gibson testified in his own defense. During the proceeding, Gibson admitted
that counsel relayed the State's plea bargain offer. The record of the proceeding also
shows that counsel explained to Gibson that the State was "going to try to prove
other felonies" against him. Gibson acknowledged he was aware and responded, "But
that’s what I’m saying. I did my time." The record shows that Gibson elected to
testify at trial, against the advice of counsel. Although Gibson’s mother testified at
the penalty phase of the trial, she asked the jury for leniency in punishment. 
         The record contains no evidentiary support for Gibson's claims of ineffective
assistance of counsel. Gibson has not rebutted the presumption he was adequately
represented. See Strickland, 466 U.S. at 688. Thus, on this record, we conclude that
Gibson has failed to establish that his trial counsel was ineffective.


V. CONCLUSION
         Accordingly, our independent review of the record concludes that Gibson's
appeal is frivolous. We conclude that this appeal is without merit. See Penson,
488 U.S. at 80; see also Martin v. State, No. 13-02-118-CR, 2003 Tex. App. LEXIS 
10181, at *3 (Tex. App.–Corpus Christi Dec. 4, 2003, no pet. h.). We affirm the
judgment and sentence of the trial court. 
 
VI. MOTION TO WITHDRAW
         An appellate court may grant counsel's motion to withdraw filed in connection
with an Anders brief. Moore v. State, 466 S.W.2d 289, 291 n.1 (Tex. Crim.
App. 1971); see Stafford, 813 S.W.2d at 511 (noting that Anders brief should be filed
with request for withdrawal from case). Substitute appellate counsel in this case has
not requested to withdraw from further representation of Gibson on appeal. We
hereby order counsel to advise Gibson promptly of the disposition of this case and the
availability of discretionary review. See Ex parte Wilson, 956 S.W.2d 25, 27 (Tex.
Crim. App. 1997) (en banc). We further order counsel to file any motion to withdraw
as court-appointed counsel with this Court within ten days of the date of this opinion. 
See Martin, 2003 Tex. App. LEXIS 10181, at *4. 
                                                                        ERRLINDA CASTILLO
                                                                        Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and filed
this 28th day of April, 2005.