IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00247-CV

 

City of Milford,

                                                                                    Appellant

 v.

 

Nestor Calderon, Jr.,

                                                                                    Appellee

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 79,293

 



MEMORANDUM  Opinion










 

            Appellant, City of Milford, filed a notice
of appeal from an adverse judgment issued by the trial court.  Now, City of
Milford has filed an unopposed motion to dismiss the appeal.  In the motion,
City of Milford requests that we dismiss the appeal and remand the case back to
the trial court for completion of the dismissal process.

            We are not permitted by the Rules of
Appellate Procedure to dismiss the appeal and remand the case.  Accordingly, we
grant City of Milford’s motion in part, set aside the trial court’s judgment
without regard to the merits, and remand the case to the trial court for
further proceedings.  See Tex. R.
App. P. 42.1(a)(2)(B).

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Reyna, and

            Justice
Davis

Judgment
set aside and remanded

Opinion
delivered and filed December 8, 2010

 [CV06]






e="font-weight: bold">                                                                                                    

O P I N I O N
                                                                                                    

      In a single trial, Santo Buttacavoli was convicted by a jury of possession of marihuana ("case
one") and cocaine ("case two"). See Tex. Health & Safety Code Ann. §§ 481.121(b)(4),
481.115(b) (Vernon 1992). He was sentenced to ten years imprisonment, probated, in each case. 
He appeals both convictions on identical points alleging an illegal search, improper peremptory
challenges, and charge error. He also complains that the evidence is insufficient to convict him
of possession of cocaine.
FACTS
      On November 18, 1991, at approximately 2:30 p.m., Department of Public Safety (DPS)
Trooper Larry Price and his partner, Trooper Ralph Billings, were patrolling Interstate 45 in
Freestone County. Approximately one mile south of Fairfield, a 1981 Buick passed the troopers
going north.


 Price said that Buttacavoli, the driver of the Buick, did not appear to be wearing
a seat belt. After the troopers stopped the vehicle, Buttacavoli met them at the rear of the Buick,
and Price told him why he had been stopped. Buttacavoli told the troopers that he had been
wearing his seat belt, but that the shoulder strap hurt his neck so he wore it under his left arm. 
Price walked to the driver's side of the Buick, opened the door, examined the seat belt, and
smelled what he believed to be the faint odor of burnt marihuana.
      Price asked the passenger, Joey Monteverde, to exit the vehicle. At Price's request,
Buttacavoli opened the trunk for a brief moment—"about three seconds"—then shut it. After
shutting the trunk, Buttacavoli advised Price that Monteverde had marihuana in his pocket. A
search of Monteverde revealed a small amount of marihuana. Price then searched the interior of
the vehicle. In the glove compartment, he found Monteverde's driver's license and a Marlboro
cigarette box. Price took the keys, opened the car trunk, and observed two garbage sacks. Price
felt the sacks, which were tied shut, and determined from their smell and feel that they contained
marihuana. Both Buttacavoli and Monteverde were placed under arrest. An inventory search of
the vehicle revealed that the Marlboro cigarette box contained cocaine. A plastic drinking straw
found in the vehicle also contained traces of cocaine.
WARRANTLESS SEARCH
      In point one of both cases, Buttacavoli complains that the court erred in admitting the
marihuana and cocaine into evidence because the drugs were obtained through an illegal,
warrantless search. After a hearing, the court overruled Buttacavoli's motion to suppress the
evidence.
      In a hearing on a motion to suppress, the trial judge is the sole and exclusive trier of fact and
judge of the credibility of the witnesses as well as the weight to be given to their testimony. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). If the court's resolution of a
controverted issue is supported by the record, a reviewing court should not disturb that decision. 
Muniz v. State, 851 S.W.2d 238, 252 (Tex. Crim. App. 1993).
      Circumstances short of probable cause will permit a temporary investigative stop for the
purposes of gathering information or to determine whether a crime has been committed. Terry v.
Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A routine traffic stop is a temporary
investigative stop. Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d
317 (1984). Occupants of the front seat of a passenger car must wear a safety belt when the
vehicle is in operation. Tex. Rev. Civ. Stat. Ann. art. 6701d, § 107C(b) (Vernon Supp. 1993). 
A violation of traffic laws is sufficient authority for an officer to stop a vehicle. Armitage v. State,
637 S.W.2d 936, 939 (Tex. Crim. App. 1982).
      Buttacavoli argues that Price's entering the vehicle to inspect the seat belt was an illegal,
warrantless search. Officer Price said he observed Buttacavoli driving without a safety belt. He
was entitled to temporarily detain Buttacavoli to determine whether he was in violation of the law. 
See id.; Terry, 392 U.S. at 21, 88 S.Ct. at 1880. Once stopped and informed of the charge,
Buttacavoli offered the explanation that he had been wearing his seat belt with the shoulder strap
under his left arm. Price then opened the driver's door "to observe the seatbelt situation, what the
seatbelt looked like." An investigative stop should be "reasonably related in scope to the
circumstances which justified the interference in the first place." Terry, 392 U.S. at 20, 88 S.Ct.
at 1879. Because Buttacavoli told the officer that he had been wearing a seatbelt under his arm,
Price opened the door to observe the seatbelt. We hold that, given Buttacavoli's explanation,
Price's opening the vehicle door did not exceed the scope of the investigative stop. See id.
      The police may search an automobile which they have probable cause to believe contains
contraband or evidence. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543
(1925). Having found marihuana on the person of a passenger in the vehicle, "the question to be
asked, in terms of probable cause for a further search, is whether a man of reasonable caution
would be warranted in the belief that other contraband items may be located in the trunk of the
car." See Osban v. State, 726 S.W.2d 107, 109 (Tex. Crim. App. 1986) (on rehearing)


 (search
of interior of vehicle incident to an arrest for driving with suspended license that revealed small
amounts of contraband and large amounts of cash gave probable cause for inventory search of
locked trunk). Once a vehicle is validly stopped, the vehicle is subject to a warrantless search if
the objective facts give the officer probable cause. Levine v. State, 794 S.W.2d 451, 452 (Tex.
App.—Amarillo 1990, no pet.) (driver stopped for speeding "reeked" of marihuana and made
statements to troopers "that he would give [the troopers] his pot"). Probable cause justifies the
search of every part of the vehicle that might conceal the contraband. See id. at 454. 
      The objective facts are: Price smelled the faint odor of burnt marihuana inside the vehicle;
Buttacavoli consented to open the trunk, but left it open for only three seconds; Buttacavoli looked
frightened and was breathing hard; Buttacavoli told the officers that Monteverde had marihuana;
and a search of Monteverde revealed marihuana. We find that Price had probable cause to search
the vehicle. See id. We overrule point one in each case.
      In point two of case one and point four of case two, Buttacavoli complains of the court's
failure to grant his Batson motion after the State used peremptory strikes on five black panel
members. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). 
Buttacavoli directs us to the strikes used against only three of those individuals. The prosecutor
stated that he struck Randolf Daniel because he was unkempt, his eyes were extremely bloodshot,
and he had an alcohol problem. Daniel did not have his juror card and got "smart" with the clerk
when he went to get a replacement card. The clerk had to fill out Daniel's juror card for him. 
Furthermore, Daniel was the only juror of those who had previously received traffic citations who
stated that he had not deserved his ticket. Because Buttacavoli's defense was based on the initial
traffic stop, the prosecutor said that he did not want a juror who felt he had not deserved a traffic
ticket.
      According to the prosecutor, Jimmy Lee Carter was struck because he came in late and spoke
with the judge on two occasions trying to get off of jury duty. The prosecutor stated that, in his
opinion, Carter did not want to serve on a jury. He also said that Carter slept through fifty-percent of the voir dire examination and that Carter himself had stated that he "didn't belong here"
and that he was not a resident of the county.
      Brenda Robinson was struck, the prosecutor explained, because her husband had been
convicted of driving while intoxicated and, in her opinion, had been treated unfairly. The
prosecutor said that, having dealt with Robinson on prior occasions concerning a lawsuit, he
formed the opinion that Robinson "is of extremely low intellect, probably bordering on
subnormal." He said that he did not believe she had the mental ability to grasp the case.
      We review the evidence adduced at the Batson hearing in the light most favorable to the trial
court's ruling. See Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. App.), cert. denied,
—U.S.—, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). Our review of the court's determination
of the issues is controlled by the "clear error" standard of review. See Vargas v. State, 838
S.W.2d 552, 554 (Tex. Crim. App. 1992). In applying this standard, a determination is made
whether the trial judge's decision is supported by the record so that it is not clearly erroneous. 
Emerson v. State, 851 S.W.2d 269, 273 (Tex. Crim. App. 1993). Having reviewed the voir dire
examination and the testimony at the Batson hearing, we find that the court's decision is supported
by the record and is not clearly erroneous. Id. We overrule the points.
      In point three of case one and point five of case two, Buttacavoli asserts that the court erred
in refusing to grant a mistrial for the State's repeated attacks on his defense counsel during closing
argument. The prosecutor made numerous references to defense counsel playing "little lawyer
games," to "many tricks [defense counsel] pulled," and defense counsel's "bag of tricks." Defense
counsel repeatedly objected, and the court instructed the jury to disregard the arguments. Defense
counsel twice moved for a mistrial. The court denied both requests.
      Following an objectionable argument, an instruction by the court to disregard the comment
will normally obviate the harm unless the remark is so inflammatory that its prejudicial effect
cannot reasonably be removed by the admonishment. Kinnamon v. State, 791 S.W.2d 84, 89
(Tex. Crim. App. 1990). Moreover, for an improper argument to rise to a level mandating
reversal, the argument must be "extreme or manifestly improper, or inject new and harmful facts
into evidence." Id. Although we do not condone these arguments, we do not find that they were
extreme or manifestly improper. See id. We overrule the points.
      In point four of case one and point six of case two, Buttacavoli asserts that the court erred in
instructing the jury on the seat belt violation. The court instructed the jury: "An officer is
permitted, however, to make a temporary investigative detention of a motorist if the officer has
a reasonable suspicion that some activity out of the ordinary is or has occurred." Buttacavoli
argues that the appropriate standard is probable cause—that an officer must have probable cause
for a traffic stop. To temporarily stop and detain an automobile, officers need only have an
articulable and reasonable suspicion that a motorist is subject to seizure for violation of law. See
Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); Amores
v. State, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991). We overrule the points.
      In point five of case one and point seven of case two, Buttacavoli asserts that the court erred
in overruling his objection to the prosecutor's informing the jury of prior convictions during voir
dire. The following dialogue took place during defense counsel's voir dire:
[DEFENSE]: . . . And [Buttacavoli] has filed a sworn application for probation, many, many
months before today, saying he's never before been in any trouble. And there's a reason why
you file a sworn application for probation—that means under oath.
[STATE]: Your Honor, he's filed no application saying he's never been in any trouble. 
Absolutely a misstatement.
[DEFENSE]: Your Honor, we filed a sworn application.
[STATE]: I think it says convicted of a felony. I never heard of --
[DEFENSE]: If he's got anything to the contrary, Your Honor, I challenge him to offer it.
[STATE]: I will be happy to do that at the punishment phase, Your Honor.
THE COURT: You may proceed.
Defense counsel continued with his voir dire. After a lunch recess, outside the presence of the
jury, defense counsel challenged the prosecutor to produce evidence of prior misconduct. Defense
counsel moved for a mistrial. The court did not rule on the motion for mistrial, but indicated that
he would reconsider the motion if the State did not present evidence of a prior criminal record. 
      Buttacavoli complains on appeal that the court erred in overruling his objection to the State's
informing the jury of prior convictions. To preserve a complaint for appellate review, a party
must have presented to the trial court a timely objection and obtain a ruling. Tex. R. App. P.
52(a). Trial counsel did not object until thirty-five pages later in the record after the complained-of comments were made—after a lunch break. To be timely, an objection must be raised at the
earliest opportunity or as soon as the ground of objection becomes apparent. Zimmerman v. State,
860 S.W.2d 89, 100 (Tex. Crim. App. 1993). The complaint was not preserved for our review. 
We overrule the points.
      In point six of case one and point eight of case two, Buttacavoli complains that the court failed
to apply the law to the facts in the charge concerning the traffic stop. Paragraph six of the charge
instructed the jury on reasonable suspicion in a temporary investigative detention. Paragraph six
further instructed the jury that, if it found that the police officer did not have a reasonable
suspicion based on articulable facts that Buttacavoli was travelling without a seatbelt, it should
disregard the officer's testimony and his conclusions drawn as a result of the stop. We find that
the charge adequately applied the law to the facts. We overrule the points.
      In point seven of case one and point nine of case two, Buttacavoli complains that the court
erred in failing to instruct the jury on the definition of arrest. Buttacavoli's Requested Jury
Instruction No. 1 included the following paragraphs:
In that connection, you are instructed that a police officer may, without a warrant, arrest an
offender for any offense committed in his presence or within his view.
 
You are further instructed that the person is considered under arrest when he has actually been
placed under restraint or his freedom of movement has been significantly impaired by a police
officer's show of authority.
The State suggested that a definition of arrest should be given in the charge and the court included
Buttacavoli's definition. Buttacavoli requested that his definition of arrest be deleted from the
charge if it was not "given in the context of the alleged failure to wear a seatbelt on a probable
cause standard." Buttacavoli requested that the definition be deleted if the court was going to
"erroneously appl[y] the reasonable suspicion standard to the seatbelt stop." The court removed
the instruction on arrest.
      We held above that the court did not err in instructing the jury on "reasonable suspicion"
rather than "probable cause" to detain Buttacavoli on the seatbelt violation. Buttacavoli requested
the removal of the definition of arrest. Having received the relief he requested, he cannot now
complain of the court's action. See Capistran v. State, 759 S.W.2d 121, 124 (Tex. Crim. App.
1982); State v. Manning, 833 S.W.2d 322, 324 (Tex. App.—Waco 1992, no pet.). We overrule
the points.
      In point eight of case one and point ten of case two, Buttacavoli complains that the court failed
to properly instruct the jury on probable cause. The court's charge read:
By the term "probable cause," as used herein is meant where the facts and circumstances
within the officer's knowledge, and of which he has reasonably trustworthy information, are
sufficient unto themselves to warrant a man of reasonable caution to believe that an offense
has been or is being committed.
The court denied Buttacavoli's Requested Jury Instruction No. 2 that read:
You are further instructed, however, that a police officer's good faith belief does not rise to
the level of "probable cause" if it amounts to nothing more than suspicion that is based upon
an inarticulate hunch. In other words, "probable cause" does not exist where the facts known
to the officer make it just as reasonable to indulge in the belief that an offense was not being
committed.
      The State argues that the definition of probable cause that was given was taken verbatim from
Jury Charges for Texas Criminal Practice. See Paul J. McClung, Jury Charges for Texas
Criminal Practice 300 (1993). A similar definition is suggested in section 10.106[2] of the
Texas Criminal Practice Guide. Marvin O. Teague & Barry P. Helft, 1 Texas Criminal
Practice Guide § 10.106[2] (1993). We do not find that the court erred in failing to give the
requested instruction. We overrule the points.
      In point two of case two, Buttacavoli asserts that the evidence is insufficient to convict him
of possession of cocaine. Evidence will sustain a conviction if, viewing it in the light most
favorable to the verdict, any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560 (1979); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 
      A defendant must exercise care, custody, control, and management over illicit drugs, knowing
them to be drugs, before he is guilty of their possession. Dickey v. State, 693 S.W.2d 386, 389
(Tex. Crim. App. 1984). If the defendant is not in sole possession of the premises where drugs
are found, the state must prove an affirmative link between the contraband and the defendant to
establish his possession. Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.]
1981). Possession of a controlled substance need not be exclusive; if the evidence shows that the
accused jointly possessed the controlled substance with another, unlawful possession is established. 
Oaks v. State, 642 S.W.2d 174, 176 (Tex. Crim. App. 1982); Brazier v. State, 748 S.W.2d 505,
507 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). An affirmative link is established by facts
and circumstances from which one may reasonably infer that the defendant knew the contraband
existed and that he exercised care, custody, control, and management over it. Dickey, 693 S.W.2d
at 389.
      After Buttacavoli's arrest, an inventory search of the vehicle revealed a cigarette box with
cocaine in the glove compartment and a plastic drinking straw with white powder residue. The
straw was found in the sun visor on the passenger's side. Monteverde's driver's license was lying
next to the cigarette box in the glove compartment. Buttacavoli was the owner and driver of the
automobile. See Deshong, 625 S.W.2d at 329; Merideth v. State, 603 S.W.2d 872, 873 (Tex.
Crim. App. [Panel Op.] 1980); Moreno v. State, 821 S.W.2d 344, 351 (Tex. App.—Waco 1991,
pet. ref'd). The contraband was found in the glove compartment of Buttacavoli's vehicle—a
location easily accessible to him. See Moreno, 821 S.W.2d at 351. Price detected the smell of
burnt marihuana in the interior of the vehicle. A search of the trunk revealed over twelve pounds
of marihuana. Viewing the evidence in the light most favorable to the verdict, we find the
evidence sufficient for the jury to have inferred Buttacavoli's possession of the cocaine. We
overrule the point.
      In point three of case two, Buttacavoli asserts that the court erred in giving an instruction in
the opening paragraph of the charge that did not track the indictment and conflicted with another
instruction. The opening paragraph of the charge stated: "The defendant, Santo Buttacavoli,
stands charged by indictment with the offense of Possession of a controlled substance to-wit: 
Cocaine less than 28 grams." Paragraph 5 of the charge stated:
Now, if you find from the evidence beyond a reasonable doubt that on or about the 18th day
of November 1991, in Freestone County, Texas, the defendant Santo Buttacavoli, did
intentionally or knowingly possess a controlled substance, to-wit: Cocaine of an aggregate
weight including any adulterants or dilutants less than 28 grams, then you will find the
defendant guilty of possession of a controlled substance, to-wit: Cocaine of an aggregate
weight including any adulterants or dilutants less then 28 grams.
Buttacavoli complains that the words "including adulterants or dilutants" authorized the jury to
convict on different proof than that alleged in the indictment.
      Testimony indicated that the plastic straw contained trace amounts of cocaine. The substance
in the Marlboro box also contained cocaine. Possession of cocaine less than twenty-eight gram,
including adulterants and dilutants, is a second-degree felony. Tex. Health & Safety Code
Ann. § 481.115(b). There is no lesser charge than possession of less than twenty-eight grams. 
Buttacavoli could not have been harmed by any error in the instruction in the opening paragraph. 
We overrule the point.
      We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed November 10, 1993
Do not publish